### IN

# NOVEMBER, 1892.

---

## JUDGES OF THE COURT :

HON. FRANCIS T. NICHOLLS, *Chief Justice.*
HON. CHARLES E. FENNER,
HON. LYNN B. WATKINS,
HON. SAMUEL D. McENERY, } *Associate Justices.*
HON. JOSEPH A. BREAUX,

---

### No. 11,063.

THE STATE OF LOUISIANA VS. THE VICKSBURG, SHREVEPORT & PACIFIC RAILROAD COMPANY.

1. *Held,* that the State has had at no time separate, distinct interests of her own under the grant of June 3, 1856, that under that statute it acted simply as an instrumentality through which to carry out a particular purpose of Congress, a means to a special end, and that end one exclusively in the interests of the United States.

2. That, although in conveying at once all the lands embraced in the trust to the Vicksburg, Shreveport & Texas Railroad Company instead of holding the legal title in herself, selling limited quantities as the road progressed and turning the proceeds from time to time over to the constructing company as it carried on the work, the State made a radical departure from the terms of its agency; still its action was not absolutely null and void, but only voidable. The government could ratify it, should it be to its interests so to do.

3. *Held,* that as at the end of ten years the powers of the State ceased by exhaustion through its own acts and by limitation of time under the express

terms of the act of Congress the State had no power or authority in 1879 to retrace its steps, undo what it had done and attempt to restore the *status quo* by a simple legislative act of forfeiture, and by repealing its act of transfer of 1857 to the company.

4. *Held,* that an agent who has exceeded his powers should not himself be permitted to predicate an attack upon those with whom he has dealt, by setting up that he has violated his instructions, and that the Federal Government having shown up to the present time no intention of claiming a forfeiture, and the contemplated road having been built, tardily it is true but none the less built, and being now in full operation charged with the obligations exacted in the grant, the court has no right to assume that Congress will ever seek to forfeit its grant.

5. *Held,* that inasmuch as by the granting of plaintiff's prayer the legal title of the lands would be taken from the company in whom the State herself has placed them, without thereby vesting the absolute ownership of the same in the State (the State's authority to dispose of them in any way having ceased in 1866), and inasmuch as by the granting of plaintiff's prayer, should the United States refuse to forfeit the grant, a very large quantity of land would through the instrumentality of this court be placed *hors de commerce* for an indefinite time—the United States refusing to receive them, and the State under its qualified title, absolutely prohibited from making any use of them, it would be worse than a vain act for the court to adjudge these lands to be the property of the State " for the objects and purposes of the act of Congress," which is the decree sought.

6. *Held,* that the relations of these parties to each other are, through the act of the State herself, radically different from what they would have been had the State so acted as to have forced the company to come into a court as a plaintiff claiming the proceeds of the lands against herself as defendant, still holding the legal title under the trust.

7. *Held,* that the State herself is estopped from claiming that the company did not have such a property in the land conveyed to it as would permit the mortgage given by it to its bondholders to originally attach to those lands, and from claiming that the mortgage so given by the company under the authority of her own legislative act was null and void.

8. *Held,* that the State having no interests of her own in this suit, and being charged with no duty to the United States in respect to these lands, there is no basis for this petitory action, and the title to the lands must remain where the State herself has placed it until attacked (if ever it should be) by federal authority and under federal rights.

9. *Held,* the reconventional demand against the State for damages for an illegal injunction is supported neither by law nor by evidence.

A PPEAL from the Fifth District Court, Parish of Ouachita.
*Richardson, J.*

*M. J. Cunningham,* Attorney General, and *C. J. Boatner* for Plaintiff and Appellant:

1. The act of June 3, 1856, was in legal effect a deed in trust to the State of Louisiana for the purposes and on the conditions therein expressed.

State vs. Railroad Co.

2. The Legislature of the State, by act approved March 11, 1857, accepted the trust on the terms and conditions imposed.

3. By the terms of the trust the State could dispose of the property only on con ditions *precedent.* 21 Wall. 59; 92 U. S. 57.

4. The grant to the State being by public statute, all persons are charged with notice of the powers conferred by it and with the limitations imposed.

5. The act of the Legislature of Louisiana approved March 11, 1857, if construed as a disposition *in præsenti* of any more of the grant than 120 sections, was void to that extent, being beyond the power conferred by the act of Congress. The grantee under said act was charged with notice thereof, and acquired no rights thereby beyond those the State was authorized to grant.

6. The act approved March 19, 1857, authorizing the Vicksburg, Shreveport & Texas Company, grantees, to affect the lands covered by the grant beyond 120 sections, by mortgage, was void, because a mortgage is a *quasi* alienation prohibited by the terms of the grant, which prohibits the land being disposed of except as the work progresses, and prescribes the only mode in which it can be disposed of as the work prog resses.

7. The acts of March 11 and 19, 1857, construed according to the powers invested in the Legislature of Louisiana to deal with this land by the act of Congress, were contracts between the State and one of her citizens by which 120 sections of land were granted absolutely and the grantee authorized to earn the remainder by compliance with the conditions precedent imposed in the act of Congress—the permission to mortgage extending in legal effect only to the 120 sections granted *in præsenti,* and to the remainder if it should be earned.

8. The right of the Vicksburg, Shreveport & Texas Company to all the lands granted, except 120 sections, depending upon the condition that it should complete the line in ten years, *ipso facto* terminated with the termination of that period, and the right of the mortgage terminated with it. Civil Code of Louisiana, Art. 3411, 3290, 3289, 3282 and 3278; Schulenberg vs. Harriman, 21 Wall. 44, *et seq.,* and cases there cited; 92 U. S. 57. See also Civil Code of Louisiana, 2043, 2045, 2046, 2130.

9. To work estoppel, parties to deed must be *sui juris* competent to make it effectual as a contract. The State of Louisiana being incompetent to grant any rights on the land other than as authorized by the act of Congress, one Legislature could not estop a succeeding Legislature by such unauthorized act 101 U. S. R. 240.

To estop one from asserting his legal rights to property there must have been intentional deception or such gross negligence as to amount to constructive fraud. 18 Wall. 225; 93 U. S. R. 326.

To make doctrine apply to title to real estate, party misled must not only be destitute of knowledge of true state of title, but also of the means of acquiring such knowledge. 93 U. S. 336.

Party dealing with trustee with knowledge of the trust is bound by it, and gets no title where there is breach of the trust. 10 Howard, 114; 8 Wheaton, 421.

Trust property wrongfully disposed of may be recovered by *cestui* if party in possession had notice of the trust. 15 Wall. 165; 3 Howard, 333; 18 Wall. 332; 96 U. S. 30.

The act 14th February, 1879, was merely a legislative declaration of the forfeiture of the contract contained in act of March 11, 1857, and the grant therein contained was in execution of the trust conferred by the act of Congress. The failure of the last grantee to build the road leaves the legal title in the State of

Louisiana, with the trust unexecuted and the right in Congress to re-enter because of the breach of the conditions imposed in the original grant.

10. The construction of the railroad from Monroe to Shreveport, La., after the expiration of the time prescribed in the act of Congress and the act of the Legislature of Louisiana of March 11, 1857, and after the legislative declaration of its forfeiture of February 14, 1879, can not be considered as done under the authority of the State, and therefore conferred no rights under the grant to the constructing company. (See authorities cited in Tucker report Backbone land grant).

A legislative forfeiture of a public grant, for non-performance of condition annexed thereto is valid and will be maintained. 21 Wall. 63; 5 Wall. 267; 92 U. S. 57.

---

*Stubbs & Russell* and *Wise & Herndon* for Defendant and Appellee:

1. In a grant of lands by Congress to aid in the construction of a railroad, *"there be and hereby is granted"* are words of absolute donation; import an immediate transfer of title and vest a present title in the grantee, though a location of the road and filing of its map is necessary to give precision and attach it to particular tracts. The location and filing accomplishes this.

2. The condition in such a grant, that " if the road is not completed within a certain time no further sale shall be made, but the land shall revert to the United States," is a *condition subsequent.*

3. Time not being the essence of the grant, it is not forfeited, *ipso facto,* by the failure of the company to perform the condition, but to enforce the forfeiture action must be taken by authority of Congress.

4. The company had still a right to construct the road *out of time,* and until in some way Congress takes advantage of the breach, it is the duty of the government to give the company the benefit of the grant.

8th Opin. Atty. Gen. 244-256; 11th do. 47; 16th do. 397-572; H. R. Ex. Dec. 47th Cong. 29, p. 35, Atty. Gen. Brewster; 9 Wall. 95; 94 U. S. 743; 97 U. S. 291; 103 U. S. 426; 104 U. S. 329; 106 U. S. 360; 113 U. S. 629; 115 U. S. 306.

5. No one can take advantage of the non-performance of " a condition subsequent " but the grantor or his heirs or successors, and if they do not see fit to assert their right to enforce a forfeiture, the title remains unimpaired in the grantee.

6. On the failure of the company to complete the work, a forfeiture of the grant, if it resulted therefrom, can be enforced only by the United States, by judicial proceedings, or the action of Congress. 21 Wall. 60; 115 U. S. 306; 32 Fed. Rep. 899.

7. By the terms of a grant of land to a State to aid in the construction of a railroad within its bounds, the State is a mere trustee or mutual agent of the grantor and the beneficiary.

8. The grant is to the enterprise, and upon the completion of a railroad between the termini named and on the route designated in the grant, its acceptance by the trustee, and certification thereof to the grantor, the trust is at an end and is terminated *ex necesssitate.*

9. The road opposite the premises in controversy having been completed and accepted, the title, however imperfect whilst encumbered, if it may be so

termed, by the uses to which the lands were to be applied, has become perfect and indefeasible. 32 Fed. Rep. 907.

10. Lists of lands selected by the grantee and certified by the General Land Office convey as complete title as patents. Legal title passes as completely by such certification, if patent is not expressly required by law, as though patent is-U. S. Rev. Stat., Sec. 2449; sued. 6 Land Dec. 543; 115 U. S. 102; 116 U. S. 381.

11. An estate in fee can not be defeated for a breach of a condition subsequent by a legislative act, unless the condition is expressed in the deed. 2 Bl. Com. 153-54; 4 Kent Com. 120, 123; 16 Wall. 223.

12. The condition subsequent is the resolutory condition of the civil law. The contract is not dissolved of right by failure to comply; the party complaining must either sue for a specific performance or dissolution of contract. C. C. 2046.

Conditional obligations are such as are made to depend on an uncertain event. * * If the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then the resolutory condition. C. C. 2021.

The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or hinder. C. C. 2024.

The contract of which the condition forms a part is like all others, complete by the assent of the parties; the obligee has a right of which the obligor can not deprive him; its exercise is only suspended, or may be defeated, according to the nature of the condition. C. C. 2028.

The condition being complied with, has a retrospective effect to the day tha the agreement was contracted. C. C. 2041.

If the conditions be potestative * * their non-fulfilment does not of right operate a dissolution of the donation; it must be sued for. C. C. 1566.

A resolutory condition is implied in all commutative contracts, to take effect in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution or demand a specific performance. C. C. 2046.

The resolutory condition may be expressed in the contract, as well as implied; the principles which control are the same.

In all cases the dissolution of a contract may be demanded by suit or exception, and *when the resolutory condition is an event not depending on the will of either party, the contract is dissolved of right; but in other cases it must be sued for,* and the party in default may, according to circumstances, have further time allowed for the performance of the condition. C. C. 2047.

13. The act of the Legislature transferring the lands to the company contained no provision in terms for forfeiture to the State, nor was there any subsequent agreement providing for forfeiture; therefore there could be no forfeiture by the State except by judicial proceeding. 92 U. S. 66.

14. The State had a right, in furtherance of the object of the grant, to make any disposition of the lands it saw fit, "so that it did not cut off the right of the United States to compel the application of the lands to the purposes for which they were granted or prevent their forfeiture in case the company failed to perform the conditions of the grant." 32 Fed. Rep. 906.

15. The State transferred the lands to the company; specially authorized the mortgage of same to secure the loan to build the road; the mortgage was ex-

ecuted. Third parties became owners of the debt secured by this mortgage; the mortgage was closed, and the property and all its rights and privileges acquired by plaintiff with the full permission and in the mode indicated by the State; the State then is privy to all these proceedings and is estopped from divesting our vested right, destroying our rights as third parties to comply with the condition subsequent and thus earn the lands she held in trust for the enterprise. Therefore Act 39 of 1879 is null. 1 Kent, 456; Cooley Cons. 357; 16 Wall. 203; Cons. La. 155.

16. Under the terms of the act of Congress, the lands have become the property of the railroad complying with the condition subsequent by constructing the road between the termini named and along the route designated.

Failure to perform a condition subsequent is excused when it is prevented by *vis major*, the act of God or that of the obligee. 21 Pick. 389; 3 Denio, 334; 8 Blackf. 139; Pothier on Obligations, 212; C. C. 2040; Willis vs. Smith, 3 La. 501; 19 La. 235; 6 R. 450.

The courts of Louisiana will take judicial notice of the fact of the late war between the States from 1861 to 1865 inclusive, and that the State of Louisiana was an active party thereto.

It is well settled, indeed it is the textual provision of our code, that where the resolutory condition, when implied, or the condition subsequent expressly stipulated, is an event depending on the will of either party, the dissolution of the contract must be sued for in all cases when it embraces immovable property, and the party in default may, according to circumstances, have a further time for the performance of the condition. Noe vs. Taylor, 13 La. 254.

The case of Gayden vs. L., N O. & T. R. R. Co., 39 An. 269, is directly in point, and we commend it to the court as fully sustaining our position that the State was without authority to pass the Act 39 of 1879. We assume that the rules laid down by the State in its Civil Code, for measuring and preserving the rights of its citizens, will be observed, when treating, itself a party, with one of its citizens. The parent should not disregard the rules of action he prescribes for his children.

Then when the code of Louisiana establishes so clear a rule as above stated, the State will not be permitted to violate it, thus disregarding the contractual rights of its citizens. The rights of the State are under the law, not beyond it.

While the act of 3d June, 1856, was a contract between the Federal Government and the State of Louisiana, and may be governed by the common law, and the construction of the Federal courts, yet the act of 11th March, 1857, was a contract between the State of Louisiana and the V., S. & T. R. R. Co., one of its citizens, and in its execution and enforcement the *lex loci* must govern.

This being so, under the plain provisions of our code and its interpretation by our courts, the State was without authority to annul the donation or transfer of the rights it had received from the Federal Government to the V., S. & & T. Co., and therefore the Act 39 of 1879 is null and void and of no effect, as divesting the rights before conferred by the State on said company.

17. As against a mere trespasser who sets up no title, plaintiff is not bound to show a title perfect against the world. 12 An. 748; 15 An. 76; 35 An. 612; 41 An. 898.

18. A mortgage made by a railroad company is binding in the several parishes through which it may pass, by the record of same in the parish of the domicil of the company. Act 1855, p. 205, Rev. Stat., Sec. 693.

The opinion of the court was delivered by

NICHOLLS, C. J.    On the 3d day of June, 1856, the government of the United States, by act approved that day, granted certain lands therein referred to within specified limits, to the State of Louisiana for the purpose of aiding in the construction of a railroad from the Texas line, in the State of Louisiana, west of the town of Greenwood, via Greenwood, Shreveport and Monroe to a point on the Mississippi river, provided that said lands should be exclusively applied in the construction of said road, and should be disposed of only as the work progressed, and should be applied to no other purpose whatsoever.

The third section of the act declares that ''said lands shall be subject to the disposal of the Legislature thereof for the purposes aforesaid and no other, and the said railroad shall be and remain a public highway for the use of the government of the United States, free from toll or other charges, for the transportation of any property or troops of the United States.''

The fourth section declares that '' the lands granted to said State shall be disposed of only in the manner following—that is say, that a quantity of land not exceeding 120 sections, and included within a continuous lengh of twenty miles of said road, may be sold, and when the Governor of said State shall certify to the Secretary of the Interior that any twenty continuous miles of said road are constructed and completed, then another like quantity of land hereby granted may be so sold, and so on from time to time until said roads are completed, and if said roads are not completed within ten years no further sales shall be made, and the lands unsold shall revert to the United States.''

On March 11, 1857, the State of Louisiana accepted the grant, and undertook the trust contained in the above act as follows, by an Act entitled ''An act to accept in part of the grant and carry into execution the trust conferred upon the State of Louisiana by an act of Congress making a grant of lands to aid in the construction of railroads in said State.    Approved June 3, 1856.''

This act is as follows:

''Whereas, by act of Congress approved the third of June, eighteen hundred and fifty-six, donating lands to the State of Louisiana to aid in the construction of railroads within said State, the Vicksburg, Shreveport & Texas Railroad Company is entitled to receive

four hundred and twenty thousand nine hundred and twenty-four acres of land (here follows letter of commissioner showing 150,880 acres within six-mile limit and 270,044 acres between six and fifteen-mile limit) ; *wherefore*

"SECTION 1. Be it enacted, etc., that so much of the lands, rights, powers and privileges as are granted to and conferred upon the State of Louisiana by an act of Congress, entitled, 'An act making a grant of lands to the State of Louisiana and so forth,  *  *  *  for the purpose of aiding in the construction of a railroad from the Texas line, in the State of Louisiana, west of the town of Greenwood, via Greenwood, Shreveport and Monroe to a point on the Mississippi river opposite Vicksburg, be and the same are hereby accepted upon the terms contained in said act of Congress, and the same are all and severally hereby and upon the same terms disposed of, granted and conferred upon the Vicksburg, Shreveport & Texas Railroad Company, a body corporate, existing under the laws of the State of Louisiana; *provided*, said railroad company shall, within ninety days from the approval of this act, accept the same under the conditions of the said act of Congress by a resolution of its board of directors, a certified copy of which resolution bearing the corporate seal of the company, with the signature of its president and secretary, shall be filed in the office of the Secretary of State of Louisiana, who shall record the same in the record book of his office.' "

The Vicksburg, Shreveport & Texas Railroad Company complied with the conditions imposed in said act by accepting the terms thereof in the manner provided therein.

This railroad company had been chartered by the Legislature of Louisiana in 1853. Its purpose, as expressed in Sec. 2 of its charter, was "to construct and make a railroad from a point on the Mississippi river, opposite Vicksburg, thence west to the Texas State line via Monroe and Shreveport."

On the 19th of March, 1857, an act of the Legislature of Louisiana was approved, by which it was enacted: "That for the purpose of aiding in the construction of the Vicksburg, Shreveport & Texas railroad the Vicksburg, Shreveport & Texas Railroad Company should have and was granted the full and perfect right and power to mortgage and hypothecate all and every part of the lands granted by the United States to the State of Louisiana to aid in the construc-

tion of said railroads by virtue of an act of Congress making a grant of lands to the State of Louisiana to aid in the construction of railroads in said State, approved June 3, 1856, and which grant has been accepted by the State of Louisiana by an act of the General Assembly approved March 11, 1857, entitled 'An Act,' etc. That said company should have the right to include in said mortgage all the rights, franchises, privileges and immunities of every kind which the State of Louisiana or said railroad company has or may have into and upon said lands, all of which may be fully covered by such mortgage; said mortgage or mortgages may be made to secure any bond or bonds executed by said company or loan made to said company, or to cover any debt contracted or to be contracted by said company and the interest accruing or to accrue on the same or either of them." Session Acts 1857, pp. 193-194.

In pursuance of this act authorizing it to mortgage said lands granted to said railroad company by the State in carrying out the object and purposes of the work confided to the State by the act of Congress to construct said road, the railroad company in the following September issued 2000 bonds of $1000 each, for the purpose of raising money to build and equip said road, and to secure the payment of the same executed a first mortgage upon the entire road lands, including those granted to it by Congress and the State of Louisiana.

Previous to this mortgage, and a short time after the acceptance of the grant of land by the railroad company, the lands were selected, listed, and maps made of the same and filed in the Interior Department at Washington, at which time the lands were withdrawn from public sale or entry.

The road was completed within the ten years between a point on the Mississippi river to Monroe, and from Shreveport to the Texas line, and certificates to that effect given by the Governor, but the middle division, that is the portion lying between the Red river and Ouachita river was not completed within that time.

On the *14th of February, 1879*, an act was passed by the Legislature of Louisiana to the effect that "Whereas the Vicksburg, Shreveport & Texas Railroad Company had not complied with the terms and conditions of the grant of said lands to the company by the State of Louisiana and had not completed the said railroad within the time limited as aforesaid and has therefore forfeited all claims to said

lands except to such as have been legally earned and disposed of by said company; therefore

"Be it enacted, etc., That the claim of the said Vicksburg, Shreveport & Texas Railroad Company to so much of the lands as have not been legally earned and disposed of by said company, according to the terms and conditions of said grant, be and the same are hereby declared forfeited. And the said act of the General Assembly, approved March 11, 1857, entitled 'An Act etc.,' be and the same is hereby repealed in so far as the said act of the Legislature grants the said lands to the said Vicksburg, Shreveport & Texas Railroad Company, provided the title to so much as has been earned shall be unimpaired." (Session Acts 1879, No. 39.)

The General Assembly, having thus declared the lands forfeited, proceeded in the second section of the act to grant them to the Red River & Mississippi Railroad Company upon the terms and conditions of the act of Congress, provided it accept within ninety days. It may be said here that the latter company had a mere paper existence and it has never accepted the grant.

In the meantime proceedings had been taken in the United States Circuit Court for Louisiana by some of the bondholders of the company in the suit of Henry R. Jackson et. al. vs. The Vicksburg, Shreveport & Texas Railroad Company to foreclose the mortgage mentioned, which proceedings terminated in a sale on the 1st of December, 1879, of the property mortgaged, and at the sale the whole was purchased by a committee of and for the bondholders, who, under Act No. 38 of 1877, proceeded to organize the Vicksburg, Shreveport & Texas Railroad Company (the defendant herein), which company acquired all the property, franchises, etc., formerly belonging to the Vicksburg, Shreveport & Texas Railroad Company. This new company commenced at once the construction of the uncompleted portion of the said road, and in July, 1884, the whole road was completed, and that fact was certified to the Secretary of the Interior by the Governor of Louisiana.

This company owns, controls and operates the railroad along the whole line between the termini designated in the act of Congress, and claims to be the owner of all the lands embraced by the said grant of the United States of the 3d June, 1856.

This claim is contested in the present suit instituted in the name of the State of Louisiana by the attorney general.

In the petition it is averred that the Vicksburg, Shreveport & Texas Railroad Company, after accepting the said grant under the terms and conditions imposed utterly failed to comply with the conditions of said act of the State of Louisiana and of the act of Congress by building and completing said railroad within ten years, as specified in said act; that the Legislature of Louisiana, by act of 14th February, 1879, declared the grant forfeited, and also repealed its act of 11th March, 1857—that the said Vicksburg, Shreveport & Texas Railroad Company became insolvent, and failed and neglected to complete or even commence the construction of any part of the railroad between Shreveport and Monroe; and at the time of the passage of said act declaring the forfeiture it had been in default more than ten years; that notwithstanding said legislative act declaring the forfeiture of said grant, the Vicksburg, Shreveport & Pacific Railroad Company, a corporation created under the laws of Louisiana, and claiming to be the successor of said Vicksburg, Shreveport & Texas Railroad Company, proceeded thereafter to build said line and wrongfully and illegally claims to be the owner of the land covered by said grant.

That the said road was completed between a point on the Mississippi river to Monroe, and from Shreveport to the Texas line, and the necessary certificates made, which authorized the sale of the lands lying contiguous to the completed portions, but that no part of the line between Monroe and Shreveport was so completed by the grantee. That said lands were expressly by said act made subject to the disposal of the Legislature of the State for the aforesaid purposes and no other, and the Legislature of Louisiana has not in any manner whatever authorized the said Vicksburg, Shreveport & Pacific Railroad Company to receive the benefits of said grant or to obtain the sale of said lands as authorized by the grant from the United States, and, as a matter of fact, there has been no lawful sale thereof for that purpose.

That the State of Louisiana was prohibited by the act granting said lands from disposing of the same, except as the work progressed, and was authorized to dispose of them only in the manner following, that is to say, a quantity not exceeding 120 sections, and included within a continuous length of twenty miles of said road, might be sold, and when the Governor of the State certified to the Secretary of the Interior that any continuous twenty miles of said road had been com-

pleted, then another like quantity might be sold, and so on from time to time until said road was completed.

That the Vicksburg, Shreveport & Pacific Railroad Company claims to own said grant by reason of an alleged mortgage executed on the same by the Vicksburg, Shreveport & Texas Railroad Company by virtue of an act of the Legislature of Louisiana approved March 19, 1857, and their alleged purchase of the same at a sale made to foreclose said mortgage under a decree of the United States Circuit Court in the case of Henry R. Jackson et al. vs. John T. Ludeling et al., and that they by the said mortgage and the foreclosure thereof became subrogated to all the rights of the original parties, and thereby acquired the right to the grant upon completing the road.

The plaintiff avers that said claim is unfounded in law for the following reasons:

1. The State of Louisiana was prohibited by the terms of the granting act from disposing of the lands except as the work progressed, and only in the manner and mode prescribed thereby.

2. The grant to the said company was upon conditions precedent, and the title did not pass nor the right to demand a sale exist except as the work progressed.

3. That the mortgage executed by the said company was, so far as it sought to affect the lands in question, absolutely void, as being contrary to the terms of the grant by the State to the said company, and contrary to the terms of the grant to the State of Louisiana.

4. That whatever life or vitality the said mortgage ever had, perished when the Legislature of Louisiana repealed and forfeited the grant, and the alleged purchase of the right to earn said land nearly twelve months afterwards conferred no rights whatever upon the Vicksburg, Shreveport & Pacific Company.

The plaintiff further alleged that the officers of the said Vicksburg, Shreveport & Pacific Railroad Company are selling the lands composing the aforesaid grant as rapidly as they can find purchasers, admitting, however, the want and deficiency of title in the said company by expressly stipulating against any warranty whatever, and are leasing and endeavoring to lease the same wherever the lands are open and can be cultivated. That they will sell and dispose of the same pending this suit, whereby petitioner will suffer irreparable injury in the destruction of the timber. That said property

State vs. Railroad Co.

is worth more than one hundred thousand dollars. Wherefore, the premises considered, the State prayed that the Vicksburg, Shreveport & Pacific Railroad Company be enjoined from selling or disposing of any of the lands embraced in the grant aforesaid on the line between Monroe and Shreveport, either by sale, lease or otherwise.

That on trial of the case the said lands be decreed the property of the State of Louisiana for the purposes and objects set forth in the said act of Congress of June 3, 1856, that the injunction prayed for be perpetuated, and for all proper orders and decrees in the premises.

The injunction asked for was granted but subsequently bonded by the defendant.

The defendant pleaded the general issue, admitted the enactment by the federal government of the Act of 3d June, 1856, and that the State by Act of March 11, 1857, accepted the trust imposed, and conferred the benefits upon the Vicksburg, Shreveport & Texas Railroad Company, and that said company complied with the conditions imposed in said act by accepting the terms of said act in the manner provided therein. It then declared that, pursuant to the general laws of the State, and especially the act of 19th March, 1857, the said Vickburg, Shreveport & Texas Railroad Company, to obtain funds with which to construct and finish said railroad between the termini and on the line fixed in the charter and the Act of Congress, mortgaged on the 1st September, 1857, all its property, rights and franchises, and especially the lands granted to the State of Louisiana by the federal government by Act of June 3, 1856. That of the 2000 bonds executed and issued, identified and secured by mortgage, less than 800 were sold on the markets of the world, and that the funds realized therefor were actually used in the construction of said line. That the said company in good faith and with reasonable dispatch proceeded with the construction and equipment of the railroad line, and that when the war between the States commenced it had finished both the eastern division from a point opposite Vicksburg to the west bank of Ouachita river, a distance of seventy-two miles, as well as the western division from Shreveport to the Texas line, a distance of twenty-four miles, and had spent large sums of money and much labor on the middle division, the whole being under contract, viz., that between the Ouachita and Red rivers; that the secession of Louisiana operated as its direct result the stop-

page of all works of a public character, and was particularly disas-
trous to the enterprise in which the Vicksburg, Shreveport & Texas
Railroad Company was engaged, and that being between the lines of
the contending forces it was utterly destroyed as a railroad and all
business broken up; that by the act of the State and the *vis major* the
company was prevented from the technical timely compliance with
the terms of the grant, and when thus crippled in 1866 the holders of
the bonds applied to the federal court and caused the property to be
placed in the hands of a receiver, who had no authority to build, and
thus without any fault of the company preventing its compliance with
the condition until the termination of the receivership in 1880, when,
under a-decree of the federal Supreme Court and the permissive laws of
Louisiana, all the rights, franchises, privileges and property, especially
all the said company's rights and interest in and to the lands which
were the subject of the grant, which, with the consent of the State,
had been mortgaged as stated, were purchased at the master's sale
in December, 1879, and under the law were vested in the defendant
company a corporation organized and authorized under the laws of
Louisiana. That immediately thereafter the defendant proceeded
with the work of the reconstruction of the portion of the railroad
which had been destroyed and the construction of the middle divi-
sion viz.: that between the Ouachita and Red rivers, and that the
same was completely finished and opened for traffic along its whole
line by the 1st of August, 1884. That prior to the war three sections
of twenty miles each, beginning at the Mississippi river, were com-
pleted and the proper certificates thereof made by the Governor of
the State, and duly filed in the office of the Secretary of Interior at
Washington.

That as soon as the western division was completed also certificates
thereof were made and deposited in the same office, and as
the railroad was completed from Monroe west to Shreveport, the
proper evidence and certificate thereof were filed with the Secre-
tary of the Interior at Washington and that to this day no action
has been taken by the donor, the federal government, to forfeit said
grant or any part thereof. That in so far as the plaintiff, the trus-
tee, is concerned it had no right to complain, since by its own act—
—its secession—and the precipitation of the civil war in 1861, the
property of its creature, the *cestui qui trust*, was paralyzed for more
than five years and nearly destroyed, and the litigation, the result

of plaintiff's conduct, prevented any effort to perform the work until the termination of the receivership in March, 1880. That any other construction would violate every principle of equity. That within four years after the original grant was made more than one-half of the work of building its line was performed, and after the removal of the overpowering force (which prevented work) in 1880, less than four years were required to rebuild and furnish the entire work, thus complying with the condition subsequent embraced in the act of donation. That the plaintiff is estopped by its own acts as above set forth, and especially by its permissive act of the 19th of March, 1857, from denying the authority in the Vicksburg, Shreveport & Texas Railroad Company to mortgage its rights in and under the contracting grant and it would be against good conscience to permit it to defeat rights acquired under the circumstances, and on its own assurance of right. That the condition attached to the grant to the railroad company, that the road should be completed by a day named, is a condition subsequent of which no one but the government, the donor, could claim a forfeiture, and that the government having never set up or claimed a forfeiture of the grant, which is an onerous donation, there has been no interruption and the grant has become absolute and perfect.

That plaintiff having conferred on the Vicksburg, Shreveport & Texas Railroad Company the rights and franchises to build and operate a railroad on the line and between the *termini* fixed conferred upon it the special authority to mortgage this right and franchise as well as its other property, and defendant having acted thereon plaintiff is estopped not only in declaring or afterward setting up the nullity of the mortgage, but also can not in any other manner than by judicial proceedings attempt to forfeit the charter or rights, and that, therefore, Act No. 39 of 1879 is utterly null and void, as a violation of its own laws as well as the organic laws of the United States.

That the right to perform the condition subsequent was a vested right so far as the plaintiff was concerned, and could not be divested by her own legislative act. Constitution, Art. 1, Sec. 10.

That the rights of the State over the property, the subject of the grant, were purely and simply those of a naked trust for disposition only to the enterprise of a construction of a railroad on the line and between the *termini* fixed in the deed.

That the State can make no other disposition of the land than that prescribed in the deed, the chart of authority.

That the Act No. 39 of 1879 does not, nor does the State, have any authority to forfeit the grant to the enterprise, but it is simply a vain effort to change the name of the agent for the accomplishment of the enterprise.

That the Red & Mississippi Railroad Company, to which Act No. 39 sought to convey the right to earn the lands, though having for its purpose the construction of a railroad on the line and between the same *termini* as the Vicksburg, Shreveport & Pacific Railroad Company, never had any other than a paper existence—never accepted the terms of the act, nor did it have any capital stock nor do any work, but was a nonentity.

That defendant, after its purchase of the rights and franchises, commenced the work in 1880, and prosecuted the same on the original line to completion, and that the State, through its executive, as the sections were completed, certified the fact to the general government, and finally, on its completion, August 1, 1884, that fact was duly certified by His Excellency the Governor of the State of Louisiana.

That by the completion of the work the condition subsequent was performed and the title of the donee by the performance of the condition has become absolute and that the certification thus aforesaid was an irrevocable confirmation of defendant's title.

That defendant, having acquired under due process the franchise to do so, has constructed the railroad and complied with the conditions of the grant, and that the donor not complaining, the trustee, the plaintiff herein, is bound *in foro conscientiæ* in the discharge of her trust to do all arts necessary to complete the same.

That the certification of the Governor was sufficient, but that at the instigation of others the Attorney General, without sufficient authority in law, has brought this suit in the name of the State of Louisiana and obtained an order of injunction, seriously impairing the active operations of the defendant in disposing of said lands to actual settlers and opening the same to productiveness.

That said injunction, issued wrongfully, is oppressive and damaging to defendant's business, by interruption of the current of its land business and sales, in the sum of twenty-five thousand dollars.

That the injunction and the suit are without merit, and the former

should be dismissed with damages as stated, and the latter dismissed and respondent prayed accordingly.

Defendant further prayed that the court would, in said judgment, quiet it in its title to the said lands, all that were the subject of the grant of 3d June, 1856, and all of which has been selected, listed and certified in accordance with the law and the regulations of the Departmen⸳ of the Interior, and finally for general relief.

On trial the court below dissolved the injunction, rejected plaintiff's demand and dismissed the suit.

The plaintiff has appealed, and the defendant has filed a motion to amend the judgment, praying for judgment for damages as asked for in the lower court, and that the court decree the title of the defendant, the V., S. & P. R. R. Co. to the lands which were the subject of the grant of Congress of 3d June, 1856, to aid in the construction of a railroad from a point on the Mississippi river, opposite Vicksburg, westward through Monroe, Shreveport and Greenwood to the Texas State line to be perfect and indefeasible as having been earned by the completion of the railroad on the line fixed.

In the consideration of this case we directed our attention at once to the Act of 3d June, 1856, in order to ascertain its exact character —the motives and reasons for and cause of its passage, and also the relations of the parties *inter se*, and to the subject matter. It being unquestionably true that the construction of a railroad through a locality plays a most important part in its material and social development—it being also true that on broadened lines it contributes to the prosperity of the people of the country at large, the act was examined with the view of determining whether such incidental advantages to flow from the proposed work, either to the United States or to the State, was the moving cause of the act, or whether there was or was not some special object or advantage to enure at once to the benefit of the government itself, to which could be referred the impelling motive for the grant.

If the expectation of either general or particular consequential benefit to the State of Louisiana operated on the mind of Congress, that fact is not apparent on the face of the act. So far as its language affords any clue or reason for its enactment the object of the grant is to be found in the exaction from the road about to be built between the *termini* designated that " it should be and remain a high-

way for the Government of the United States, free from all toll or charges upon transportation of any property of the United States.''

There have been grants from the general government to particular States, wherein the purpose to contribute to the special benefit of the State was so evident that notwithstanding Congress itself selected the particular purpose to which they were to be applied, and to a certain extent controlled their application, the grants retained the marked distinctive features of real donations, but we do not regard the one presently before us as one of that character.

Whilst the benefits to the people of Louisiana specially resulting to them from the road furnish a clear motive for the acceptance of the trust by the Legislature, there is nothing to indicate that those reasons entered into the thought of Congress so as to serve as a legal link between them on that score.

The result of our examination of the Act of 1856 has been to convince us that it was framed with direct reference not only to limiting, but to strictly limiting the *status* of the State under it to that of a mere instrumentality to carry out a special purpose of Congress— that the State was to serve as a means to a special end, and that end one exclusively (so far as the act itself shows) in the interest of the general government. This fact is made manifest by the declaration, emphasized by repetition, that the lands were granted for and to be used for the particular purpose above mentioned and NO OTHER; by the cautiously and carefully guarded manner of disposing in small quantities of the lands, the legal title of which had been placed in trust in the State by the government, by the limitation of ten years upon the duration of the trust, and the pointed clause in the act that if the railroad was not constructed in ten years *no further sales should be made, and the unsold land should revert to the United States.* It was important for us to determine whether the State of Louisiana had separate distinct interests of her own in the matter of this grant which she was pursuing in this case, or whether she was simply seeking to guard, protect and enforce the supposed rights of the United States in the premises.

We can see no possible interest in her own right which the State has in this matter; certainly no present interest for a road has been constructed as contemplated, which is now in full operation, carrying with it all the incidental benefits heretofore alluded to.

If the prayer of the petition were granted we would take the legal title out of the defendant without the ownership of the lands being made thereby to vest in the State.

The prayer of the petition recognizes that their absolute ownership should not pass to the State under our judgment—the court is asked simply to decree the lands ''to be the property of the State of Louisiana, *for the purposes and objects set forth in the said act of Congress.*'' Under such a condition of things the State would have no power of disposing of the lands *to her own use,* for the act of Congress expressly declares, as we have said, that they shall be disposed of by the Legislature for the purpose of the *construction of the said road and no other,* and it is manifest on the face of the paper that so far as concerns *the execution of the trust by the State* it has now passed beyond its control—if control be still needed. The act in unambiguous, unmistakable terms fixes a limit of ten years to the continuance of the trust.

If it be true, as contended by the plaintiff, that a failure by the Vicksburg, Shreveport & Texas Railroad Company to complete the road within ten years operated *quoad* that company a forfeiture of the grant to it, that same fact put an end simultaneously to any further possible action by the State in carrying out the trust. The time and method of disposing of the lands as fixed in the act are declared by the plaintiff to be sacramental, and any departure therefrom *ultra vires.* Now, as the sole method of disposing of the lands is by sales of specified quantities in the happening of certain facts, and as further sales by the State after ten years are expressly prohibited, and the lands unsold at that time are made at once to *revert to the United States,* it is clear that it would be a vain act to decree the lands to be the property of the State *for the purposes and objects set forth in the act of Congress.*

In plaintiff's brief it is intimated that the object of this suit is '' to return to the general government those lands which have not been used for the purpose for which they were granted, and which will thereby become homes for our people and not enure to the benefit of the speculators who have acquired the property of the old Vicksburg, Shreveport & Texas Railroad Company.''

We are not only not advised of any desire on the part of the general government to have those lands returned, but, so far as our information goes, there has been a very strong but unsuccessful effort

made directly upon Congress to have it declare these lands forfeited.

There may be very strong reasons why Congress should not wish to take such a step. The railroad which it sought to have completed has been constructed—tardily, it is true, but none the less constructed—and it is now in full operation on the line fixed, and standing pledged and committed *"to be and remain a public highway for the Government of the United States,* free from all toll or charges upon the transportation of any property of the United States.'' If it was important in 1856 that such a road should be built charged with such obligations, it is doubtless as important now as then.

There would be no certainty (were these lands returned) that a road as contemplated, and particularly a continuous road, could now BE constructed on what would now be a divided grant, and with two railroads running on the same line.

Whilst there was unquestionably a departure by the State itself from the terms of its agency from the United States, the general government might think it more to *its interest* to ratify this departure than to repudiate it; the action taken was not absolutely null and void, but only voidable should the principal so elect.

An agent who has exceeded his authority should not be permitted to predicate an attack either in his own name or that of his principal upon those with whom he has dealt, upon the allegation and assertion that he has gone beyond his powers; certainly not without giving his principal an opportunity to accept or reject what has been done. It may be greatly to the latter's interest to accept.

Were the government to take this view of the situation and positively refuse to receive the lands back, and in the meantime under a decree of this court the legal title which was placed in trust in the State *for the accomplishment of the objects and purposes of the Act of 1856* should be replaced in the State, a very anomalous condition of affairs would have been produced through the instrumentality of this tribunal. A very large quantity of land would have practically been placed *hors de commerce* for an indefinite time, the United States Government refusing to claim it, and the State under the terms of its qualified title *unable to deal with it for any purpose.*

We find the State charged with no duty to the United States in respect to these lands. It had in the first place a mere restricted agency which, such as it was, has expired by the exhaustion of all

powers under it and by limitation of time. There has been no intimation to us that the general government has had any communication with the State authorities on this subject since June, 1856.

We are told that a number of citizens have settled upon what are designated the unearned lands on the faith of the non-compliance by the Vicksburg, Shreveport & Texas Railroad Company with the conditions of the grant and of an ultimate forfeiture, and that their rights should be protected. We do not see how any action the State could take in this matter would, if taken, benefit those parties.

It is clear that the proper, in fact the only quarter in which they could be considered would be in and through Congress or the United States authorities.

Finding no interest in the State in its own right in the present suit, and no power or authority in right of the United States, there is no basis upon which this petitory action can rest. The title to these lands must remain where the State herself has placed it until disturbed and attacked, if it ever should be, under federal rights and federal authority.

We have examined the legal points raised by the plaintiff, but the view which we have taken obviates the necessity of a special discussion of them.

So far as concerns the original legal existence of the mortgage granted by the Vicksburg, Shreveport & Texas Railroad Company securing the bonds issued by it under authority of Act No. 198 of 1857, we have held and still hold that the State is estopped from contesting it on the ground of her own want of power to grant the authority to that company to give the mortgage, or on the ground that the railroad had no such ownership in the lands as that the mortgage could not originally attach to it.

There has been a good deal of discussion in the case as to "conditions precedent" and "conditions subsequent," and as to the effect of the act of the Legislature of 1879 declaring a forfeiture of the conveyance of the lands to the Vicksburg, Shreveport & Texas Railroad Company and repealing the act of 11th March, 1857, but whether what are denominated *"conditions"* of the grant are really such or merely prohibitory limitations upon the powers of the agent, the State, when she *transferred at once, and, as it were, at one bound,* the legal title of all these lands to the Vicksburg, Shreveport & Texas Railroad Company, she *had gone too far as between herself and that*

*company*, no matter what the situation might be between the company and the general government, to take the position that she could *retrace her steps* and *restore the status quo* through a legislative declaration of forfeiture or by repealing the act of 1857.

The position of these parties by the act of the State is very materially different from what it would have been had the State so acted as to have forced the company to appear before the court as a plaintiff, claiming the benefit of the grant, as against the trustee still holding the legal title.

There is no prayer in plaintiff's petition for a present decree of forfeiture—the plaintiff relying upon the position that that had been accomplished as the direct and immediate result of the act of 1879, which has been referred to.

It may be well, perhaps, to note that at the time of the passage of that act, over twenty years had elapsed from the date of the original act of Congress, and that at that time (according to plaintiff's allegations) the Vicksburg, Shreveport & Texas Railroad Company had been in default over ten years, since the grant had been, in so far as the State was concerned, *"executed"* by itself. At that time its original powers had expired by exhaustion and limitation and it had acquired no new ones.

We have been called on, on two occasions, to examine into the rights of the present defendant in and to the lands embraced in the act of June 3, 1856, once in the case of the V., S. & P. R. R. Co. vs. Sledge, 41 An. 896, and once in that of Kemp vs. Mower, 42 An. 1007, and whilst by reason of a difference of parties in the present case and those cited the decisions rendered therein do not fall technically under the plea of *res judicata*, they none the less substantially dispose of the issues raised in this.

The prayer for a judgment for damages against the State by reason of the taking out of the injunction herein finds no support either in the law or the evidence. (See 37 An. 624.)

We do not feel justified or authorized to vary the terms of the judgment from those used by the court below.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.

Judgment affirmed.