PAULINE, f. w. c., *v.* L. A. HUBERT et al.

An administrator has the capacity to stand in judgment in a suit by a slave, inventoried as part of the succession, to have her freedom established.

It must now be considered settled, that effect will be given to parol proof of the sale of real estate, if it is received without objection.

The heirs and creditors of the estate will be bound by the acts of the administrator, as to the mode of proceeding in the defence of a suit and the reception and rejection of evidence.

The child of a *statu libera* who, by Art. 196 of the Code, is to become free at the time fixed for the enfranchisement of the mother, requires the consent of the public authorities to her emancipation, and since the Act of the Legislature of 1857, the emancipation cannot be affected.

APPEAL from the District Court of the Parish of Pointe Coupée, *Ratliff,* J. *T. J. & W. Cooley,* for plaintiff. *T. H. Farrar* and *J. Yoist,* for defendants and appellants.

MERRICK, C. J. The plaintiff and her mother, *Arsène,* were the slaves of *Onil Bourgeat. Arsène* contracted, in 1850 or 1851, with *Bourgeat,* for the emancipation of herself and *Pauline.* The condition (it seems) being the payment of $1,500. *Arsène* not being able to raise the whole sum paid $600, the price of herself, and received an act of emancipation for herself alone. Subsequently a friend advanced the nine hundred dollars, and tendered the same to *Bourgeat* for *Pauline,* in her behalf, or as her agent. In the mean time *Pauline,* had given birth to a child named *Julie,* the subject of the present controversy. At the time of the tender of the $900, *Bourgeat* insisted on being paid one hundred dollars more as the price of *Julie.* This was paid, also, on behalf of *Pauline.* In three or four days afterwards, it being in the year 1852, *Bourgeat* passed the act of emancipation of *Pauline.* Mention of the child was omitted in the act. It is conceded, that the acts of emancipation of *Arsène* and *Pauline,* were in due form and made with the consent of the proper authorities.

After the death of *Onil Bourgeat, Julie* was inventoried as the property of his succession, and an order obtained for her sale.

This suit is brought against the administrator and the auctioneer, to restrain them from selling, and to have the freedom of *Julie* recognized.

There was judgment for the plaintiff, and the defendant, *Moore,* the administrator, appeals.

The appellant relies for a reversal of the judgment, upon two grounds, viz :

1st. That the administrator has no capacity to stand in judgment ; and

2d. The proof of the contract for emancipation of *Pauline* and her child being parol, no effect can be given to the same by the court.

I. We see no objection to the form of the action. The heirs may not have accepted the succession, and as the administrator must represent the creditors also, we see no objection to his standing in judgment for the protection of the rights of all parties in the effects entrusted to his administration. The Article of the Code of Practice relative to testamentary executors (Art. 123), is not applicable. The powers of the testamentary executor at the time of the adoption of the Code of Practice, were very different from those of the administrator.

II. The testimony to prove the contract for the emancipation of *Pauline* and her child, was parol. It was admitted without objection. It is conceded by

21

defendants' counsel, that if effect must be given to the parol contract proven in this case, there should be judgment in favor of the plaintiff. But it is contended " that the contract for the emancipation of the slave is but a sale of the slave to herself, and that under Article 2415 C. C., a verbal sale of a slave is null as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted. That the law does not say that parol evidence of a verbal sale of a slave is inadmissible, if objected to ; but it says, that the verbal sale of a slave is void, even as between the vendor and vendee, and to say, that a certain *form* of sale declared void by express law, because made *in that form*, shall nevertheless be held valid because it is proved to have been made in the very form reprobated by the positive law, is an absurdity."

Were the Articles of the Civil Code on the subject of verbal sales a new question, the argument urged might have occasioned us much trouble, for it is in the light of a sale, we think, in which the contract between *Pauline* and *Bourgeat* for *Julie*, should be viewed in the present controversy.

But the Article in question has been so often and with so much uniformity construed adversely to defendants, that the law on the subject must be considered as long since settled.

Article 2415 of the present Code is identical with Art. 2, p. 344, of the Code of 1808. Under that Code the Article was construed, first, as contended for by defendant's counsel, but, after much discussion, it was held that a party who would object to parol evidence must except to its introduction. 5 M. R. 442. In the case of *Bateman* v. *Cormier*, 1 N. S., the court said, parties have certainly a right to acknowledge a parol contract for land and they have a right to consent that their stipulations in regard to it, may be proved by parol. In the case of *Mills* v. *Hunter*, 5 N. S. 121, the court, after comparing the other Articles of Code of 1808 on the same subject, arrived at the same conclusion. In the case of *Strawbridge* v. *Warfield*, 4 La. 22, the court considered the corresponding Articles of the present Code and amendments, and adopted the same construction as had been given to them in the old Code, and gave effect to parol proof of the sale of a slave, such proof having been received without objection. This decision has been uniformly adhered to since. *Hopkins* v. *Lacoutere*, 4 La. 64 ; *Brown* v. *Frantum*, 6 La. 46 ; *Henry* v. *Dinkgrave*, 19 La. 483 ; *Jacob* v. *Davis*, 4 An. 39 ; 7 An. 33, *Packwood* v. *White ;* see also 3 An. 136. The question must, therefore, be considered as at rest.

But it is said that the administrator acting as he does in a representative capacity, cannot bind the heirs and creditors by the admission of illegal testimony. As the administrator has the capacity to stand in judgment, the usual rules as to the mode of proceeding and the reception and rejection of evidence must bind him.

The conclusion to which we have arrived, leaves the case where it is conceded by defendant's counsel, there must be judgment for the plaintiff, for if the slave is not free, she was sold ; *Bourgeat* and his estate is not the owner.

But it has been observed, that the child *Julie* has never been emancipated by her former owner ; nor have the public authorities ever authorized her emancipation. It is contended, by plaintiff's counsel, that she is free by the express terms of Article 196 of the Civil Code, which is in these words : " The child born of a woman after she has acquired the right of being free at a future time, follows the condition of its mother, and becomes free at the time fixed for her enfranchisement, even if the mother should die before that time."

We think this Article must be construed with reference to the other provisions of the Code, and that the child of the *statu libera*, like the *statu libera* herself could only become free by the consent of the public authorities. For the public have an interest in the emancipation of slaves, both that they should be of good character, and that the person emancipating should support them, should they be unable to support themselves. C. C. 185, 188 ; *Henriette* v. *Barnes*, 11 An. 454 ; *Louisa Marshall* v. *Watrigant*, 13 An. 619. And of this the courts ought to take notice, although not formally called to their attention.

The judgment of the lower court, therefore, so far as it decrees the freedom of the slave *Julie*, must be reversed ; but the contract of sale having been proven, the injunction can be maintained to prevent the sale of *Julie*, by the defendants, as the property of the *Succession of Onil Bourgeat*, deceased.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged, and decreed by the court, that the injunction granted in this case be perpetuated ; that said slave *Julie* be delivered to the plaintiff, she paying the costs of the appeal, and the defendants, those of the lower court.

COLE, J., dissenting. I am of opinion that the contract of emancipation is established by the parol evidence, which was admitted without objection.

I cannot, however, concur with the interpretation given by the court to Article 196 of the Civil Code.

This Article reads as follows :

" The child born of a woman after she has acquired the right of being free at a future time, follows the condition of its mother, and becomes free at the time fixed for her enfranchisement, even if the mother should die before that time."

This Article plainly declares, that at the moment the mother is entitled to be enfranchised, the child becomes free. The child being free, no ratification of it by a court of justice is necessary. It is different as to the mother ; for the Article says, " after she has acquired the right of being free." The Article distinguishes between the two, giving to the mother a " *right* of being free," which implies a *right* of *action* to have her freedom judicially pronounced, and giving to the child freedom at the moment the right of action of the mother commences.

Besides, the Article, as to the mother, speaks of her " enfranchisement," which implies some action for becoming free ; whereas, as to the child, it says it " *becomes free*," even if the mother should die before the time fixed for her enfranchisement.

If my interpretation of Article 196 be incorrect, another serious question would arise, whether the plaintiff had not acquired under this Article, even as interpreted by the majority of the court, such a vested right to her liberty as she could not be divested of by subsequent legislation, prohibiting the emancipation of slaves. Sess. Acts, 1857, p. 55. Art. 174 of the Civil Code declares, " that a slave is incapable of making any kind of contract, except those which relate to his own emancipation."

This Article, then, so far as emancipation is concerned, treats slaves as persons capable of contracting, and they are vested with the same right of contracting as to their emancipation, as freemen are as to any other species of contract.

Why, then, should slaves be deprived of the benefit of Article 105 of the Constitution of 1852, which prohibits the passage of any law impairing the obligation of contracts, or the divestiture of vested rights.

The law having authorized the contract of emancipation, and as to that, having

treated slaves as persons capable of contracting, money having been paid according to the terms of the contract, and all upon the faith of the legislation which declared that the slave would become free at the time agreed upon by the parties to the contract, it becomes a serious question as to the power of the State to practically annul, by a subsequent statute, the anterior contract.

Another question also presents itself, whether the statute of 1857, prohibiting emancipation, would apply to one claiming freedom under Article 196 of the Civil Code. Vide *George* v. *Demouy*, 14 An., dissenting opinion.

I deem it unnecessary at this time to express any opinion upon these topics, on account of the manner in which I understand Article 196 ought to be interpreted.

I am of opinion that the judgment ought to be affirmed.