## TEXAS & P. RY. CO. v. SMITH et al.[1]

(Circuit Court of Appeals, Fifth Circuit. January 3, 1899.)

No. 648.

1. JUDGMENT—COLLATERAL ATTACK.
Where an appeal to the supreme court of a state was dismissed in 1869, the judgment below became a finality, and neither its validity nor the grounds for dismissal of the appeal can be inquired into, in an action in a federal court not commenced until 1885.

2. PARTIES—REAL ACTION AGAINST ADMINISTRATOR—VALIDITY AGAINST HEIRS.
In Louisiana, where a succession owes debts and is unsettled, and has not been accepted by the heirs, a real action may be maintained against the administrator alone, and the heirs are bound by a judgment therein, though not joined as parties.

3. EJECTMENT—SUFFICIENCY OF TITLE TO SUPPORT.
In an action commenced in 1885, to recover real property, corresponding to an action in ejectment, and in which plaintiffs could only recover on the strength of their own title, they relied entirely upon an entry of the land from the state by an ancestor, in 1853, which entry was canceled and annulled at suit of the state by an adjudication of its courts which became final in 1869. The entryman having died pending the suit, his succession, which was unsettled and indebted, was represented in the suit by his administrator. There was no evidence that plaintiffs, or their ancestor, or any one in their behalf, were ever in possession of the land, which was, and had been for 12 years or more, in possession of defendants

---

[1] Rehearing denied February 21, 1899.

· under ·claim of title. *Held*, that the evidence was insufficient to support a judgment for plaintiffs.

Writ of Error to the Circuit Court of the United States for the Western District of Louisiana.

On May 14, 1853, William W. Smith made an entry in the state land office of the state of Louisiana of a tract of land known as "Cross Lake," containing 21 8/100 acres, and he·paid therefor $26.47. On December 8, 1857, the state of Louisiana filed a petition in the district court of Caddo parish, La., to set aside the entry and cancel the certificate. The state, in its petition, alleged that the entry was made under an act of the state legislature approved April 30, 1853, entitled "An act authorizing the register of the land office to sell certain shallow lakes in the state of Louisiana." The state's petition further alleged that: "Said act was promulgated by publication in the official state paper on the 23d day of June, A. D. 1853, and said act provided that the register of the land office, at Baton Rouge, be authorized to sell all the shallow lakes in this state, the area of which has been ascertained by surveys, and which are susceptible of being reclaimed, wholly or in part, by draining or leveeing: provided, that this act shall·not apply to any swamp lakes in this state; provided, said sale shall not be made until the lands have become the property of the state, and been regularly surveyed, and the surveys been recognized, by the state."

The nullity of the entry was alleged for the following reasons: (1) Because the law under which the entry was made had not been promulgated at the time of the entry; (2) because said lake had not, at the time of said entry, been legally surveyed, nor had the surveys been recognized by the state, nor have they yet been, and, further, that, had the sale not been before the promulgation of said law, it could have been sold for a much larger price, and that, if the entry was canceled, the land could be sold for $25 per acre or more. The state alleged that it made a legal tender to W. W. Smith of the sum and interest paid by him for the land, and demanded the surrender of the certificate of entry, in order that the same might be canceled; all of which Smith refused. In 1858, while this suit was pending, William W. Smith died, and one John W. Smith was appointed by the probate court of Caddo parish, La., curator of his succession. The legal heirs of William W. Smith were his brother, James F. Smith, and the minor children of a predeceased brother; all of the heirs being residents of Kentucky. The suit was revived, in 1859, against John W. Smith, as administrator of the succession of William W. Smith. The administrator answered the suit, and prayed for a jury. The cause was tried, and a verdict was rendered in favor of the state. Upon this verdict a judgment was rendered on November 24, 1860, annulling the certificate of entry and ordering the same to be· delivered up. From this judgment the administrator, on November 24, 1860, took an appeal, without supersedeas, returnable to the supreme court of the state in July, 1861. On August 3, 1867, the final account of John W. Smith, as administrator, was approved by the probate court; judgment was rendered in his favor against the succession for $3,336.04, the balance which the final account showed the estate owed him; and he was discharged as administrator, and his bond as such was canceled. On August 11, 1869, the supreme court of the state dismissed, by consent of counsel, the appeal which the administrator had taken as above stated. The present suit was instituted on May 1, 1886, ·by the legal heirs of W. W. Smith against the receivers of the Texas & Pacific Railway Company. They claimed the land in dispute, known as ,"Cross Lake," by virtue of the alleged purchase from the state of Louisiana by W. W. Smith, on May 14, 1853. They alleged that, in 1881, the New Orleans & Pacific Railroad Company illegally took possession of the land, and prayed to be decreed the lawful owners of the land and to recover rents and revenues. By· way of exception or answer, the defendants pleaded, among· other matters, that the proceedings in the state court annulling ·the certificate of entry ·are binding on the plaintiffs. They reiterated the grounds upon which the state had sued for the annulment. They averred that the land had never been selected by the state of Louisiana as swamp

and overflowed land, and had never been reported as such to the commissioner of the general land office, and had never been approved as such by the secretary of the interior or land commissioner; that the land was never listed nor returned by the secretary of the interior to the state of Louisiana as swamp and overflowed land; and that the state had never acquired and never claimed the land as swamp and overflowed land. Defendants further averred that the land never belonged to the class of land known as swamp and overflowed lands, but to the class known as "shallow lakes," and therefore not embraced in the grant of swamp and overflowed lands by the United States. Defendants further averred that they purchased the land from the New Orleans & Pacific Railway Company, and they set out a chain of title going back to one W. D. Wylie, who, on February 24, 1872, acquired the land from the United States under the acts of congress to secure homesteads to actual settlers, approved May 20, 1862, and March 21, 1864, as shown by receiver's receipt No. 683, and by patent of the United States annexed to and made part of defendants' answer. Defendants also pleaded the statute of limitation or prescription of 10 years, averring that they have been, for a period of more than 10 years, in peaceful and notorious possession, under authentic and recorded acts translative of property. The cause was tried in the lower court, and judgment rendered against the Texas & Pacific Railway Company, which in the meantime had been substituted as sole defendant; and which took its writ of error to the supreme court. The judgment was reversed, and the cause remanded. 159 U. S. 66, 15 Sup. Ct. 994. The trial below, after the remanding, again resulted in a judgment against the railway company, and from the latter judgment the railway company sued out this writ of error.

W. W. Howe, for plaintiff in error.

A. H. Leonard, for defendants in error.

Before McCORMICK, Circuit Judge, and SWAYNE and PAR-LANGE, District Judges.

PARLANGE, District Judge, after stating the facts as above, delivered the opinion of the court.

This is a petitory action, under the procedure of the state, and corresponds to the common-law action of ejectment. The plaintiff in such an action must recover on the strength of his own title, and not on the weakness of the adverse title. We do not see how the defendants in error can avoid the force and effect of the judgment rendered in 1860 in the district court of Caddo parish, La., which annulled the certificate of entry issued to W. W. Smith. The appeal to the state supreme court was dismissed in 1869. The effect of the dismissal was to make the judgment of the lower court a finality. Every presumption is in favor of the regularity of the action of the state supreme court in dismissing the appeal, and we do not know of any power in this court, especially after such a great lapse of time, which would authorize us to review the matter of the dismissal. It does not appear that any heir or representative of W. W. Smith has ever taken any action looking towards the reinstatement of the case. The dismissal, acquiesced in during the period of 17 years which elapsed until this action was brought, must be taken to have operated a final determination of the questions involved in the suit by the state. We are clear that the judgment cannot be collaterally attacked and inquired into.

The petition of the defendants in error, by which this action was begun, ignored all the proceedings in the state court, and those proceedings were set up in defense. The brief for the defendants in er-

ror makes scant reference to the state-court proceedings. But it was contended on behalf of the defendants in error, in the oral argument, that the judgment in the state court was of no effect, or at least was not binding upon the defendants in error, because the heirs of W. W. Smith were not joined in the action. The contention is without force. Whatever doubt may have existed on the point has been dispelled by the state supreme court in the case of Woodward v. Thomas, 38 La. Ann. 238. The opinion in that case reviewed anterior cases, and held that where a succession, though apparently solvent, owes debts, and is unsettled, and the heirs, though present, have not accepted the succession, the administrator, without the heirs, may stand in judgment in a real action. Exceptions to the rule, and a difference between the powers of executors and those of administrators, are pointed out in the opinion; but those matters do not concern the present cause. See cases cited in Woodward v. Thomas, supra; also Pauline v. Hubert, 14 La. Ann. 161.

It is clear that the action in the state court was properly brought against the administrator alone. The succession owed debts, as is shown by the fact that, simultaneously with his discharge, the administrator obtained against the estate a judgment for a considerable sum which the estate owed him. The heirs had never accepted the succession, and, besides, were nonresidents; the latter fact, however, being immaterial, under the main case just cited. Even if there were flaws or defects in the title of the plaintiff in error, the defendants in error could not prevail, unless they showed in themselves a title sufficiently strong to warrant the court in awarding them the property. We find, on the one hand, the defendants in error, who rely exclusively on an entry made in the state land office some 33 years before this action began. We find that entry to have been canceled and annulled at the suit of the state, the adjudication therein having become final by the action of the highest court in the state, some 17 years before the institution of this suit. We do not find any proof that, at any time previous to these proceedings, Smith or his heirs ever recorded any claim to the land, or ever paid any tax on it, or ever did any acts of ownership with regard to it, or that it was ever inventoried or claimed as a part of Smith's estate. On the other hand, we find the plaintiff in error in full possession of the land, under titles going back to a patent of the United States issued some 12 years or more before this action was instituted. Under such a state of facts, there is no room for doubt that the claim of the defendants in error must be rejected. We notice that the supreme court of the United States, in disposing of other questions involved in this case, said: "There may be a question whether the patent in this case * * * was not conclusive as to the full title upon all the parties to this litigation." 159 U. S. 68, 15 Sup. Ct. 995. We are of opinion that the lower court should have directed a verdict in favor of the plaintiff in error. The judgment of the lower court is reversed, and the cause is remanded to that court, with the direction to grant a new trial.