(117 So. 552)

No. 28535.

**VEITH v. MEYER.**

Jan. 18, 1928.   On Rehearing, June 4, 1928.

Wm. Winans Wall, of New Orleans, for appellant.

James Wilkinson, of New Orleans, for appellee.

LAND, J.   On August 4, 1913, Sarah Griffen Holmes purchased from defendant lot 19 in square 303 in the Fourth district in the city of New Orleans for a consideration of $1,850.   The sum of $350 was paid in cash by the vendee at the time, and defendant reserved a vendor's lien and special mortgage on the property sold as security for the payment of the credit portion of. the purchase price.

On February 16, 1920, Sarah Griffen Holmes died intestate in the city of New Orleans, without paying the defendant the balance due on the property, and without reimbursing certain sums expended by him for taxes and repairs.

On May 2, 1922, the public administrator for the parish of Orleans was placed in charge of her estate upon allegations that deceased had left no heirs who resided in the state of Louisiana, or any one who claimed her succession.   An attorney to represent absent heirs was also appointed.

On December 11, 1922, defendant instituted suit against the public administrator alone to have dissolved the sale made by defendant to decedent for the nonpayment of balance of the purchase price.

On February 15, 1923, judgment was rendered setting aside the sale, declaring that the property recovered by defendant was the only asset left by deceased, and that nothing was due her estate as the result of the rescission of the sale.

The present suit was brought August 9, 1926.   Plaintiff claims that he acquired the property in dispute on July 19, 1926, by purchase from the Commercial Security Company, the vendee of Minnie Ada Peyton, a feme sole.

Averring that the vendor of his author in title inherited this property, as the "sole legitimate daughter" and heir of her mother, Sarah Griffen Holmes, "the widow of George B. Holmes," plaintiff attacks as a radical nullity the judgment rescinding the sale from defendant to Sarah Griffen Holmes, on the ground that said judgment was rendered without citation to the heir Minnie Ada Peyton, who is alleged to have been present in the city of New Orleans at the time, and without citation to the attorney appointed to represent absent heirs.

If the presence of the alleged heir in the city of New Orleans be conceded at the date of the institution of the suit by defendant to dissolve the sale made by him to decedent, it does not appear that the heir had accepted at that date the succession of her mother, which was then under administration.

■ It is well settled that, where the heirs have not accepted a succession, the administrator may stand in judgment for the purpose of defending a suit brought against the de cujus for the recovery of an immovable.

■ As the administrator must represent the creditors also, there can be no objection to his standing in judgment for the protection of the rights of all parties in the effects intrusted to his administration, in cases where the heirs, though present, prefer to stand aside and let the administrator act in his own name. Pauline v. Hubert, 14 La. Ann. 161; Woodward v. Thomas, 38 La. Ann. 242; Vicksburg, S. & P. R. Co. v. Tibbs, 112 La. 58, 36 So. 223.

The judgment appealed from rejected plaintiff's demand and suit at his cost. In our opinion this judgment is correct.

Judgment affirmed.

### On Rehearing.

ST. PAUL, J. The case is stated fully in our original opinion. The complaint on rehearing is that the court erroneously found as a fact that Minnie Ada Peyton, a feme

sole, had not accepted the succession of her mother Sarah Griffen Holmes, widow of George B. Holmes.

■ It may be true that Minnie Ada Peyton might have, by her extrajudicial acts in connection with the property thereof, *accepted* the succession of her deceased mother, were she in fact, as she claims to be, the *legitimate daughter* of her mother. But our conclusion is that the evidence does not support her claim that she is a *legitimate* daughter of the deceased. And, if she be only an *illegitimate* daughter, then she had no right to *accept* her mother's succession except by being *formally* recognized and put in possession thereof by order of court and in the manner pointed out by law. R. C. C. 925, 926, 949; Succession of Allen, 44 La. Ann. 801, 11 So. 42; Succession of Barber, 52 La. Ann. 960, 27 So. 363.

■ As to the evidence of her alleged legitimacy, we give it in full below. It does not even raise a presumption in favor thereof, for she is unmarried, and her maiden name corresponds neither with the name of her alleged father, nor with the married name of her mother. Cf. R. C. C. 195. Thus:

Direct examination:

"Q. Miss Peyton, are you the daughter of Sarah Griffen, who was the wife of ——— [Question not finished.]

"A. I am the daughter of Sarah Bradford Holmes. * * *

"Q. Were you a legitimate daughter of the lady?

"A. Yes.

"Q. What was your father's' name?

"A. D. A. Bradford.

"Q. He was married to your mother?

"A. In Woodville, Miss."

Cross-examination:

"Q. How old are you?

"A. Thirty-five.

"Q. When was your father married to your mother?

"A. I am unable to tell you, because my father died when I was eighteen months old.

"Q. Then you have no knowledge of his marriage?

"A. Well, I suppose I could find that out. I personally; no.

"Q. Of your own personal knowledge, you have no knowledge whatsoever of his marriage?

"A. No; but I know she was married.

"Q. But I say you have no knowledge of the marriage between them? You say you were eighteen months old when he died?

"A. Yes, sir.

"Q. Have you a marriage certificate?

"A. Have I one of hers?

"Q. Yes?

"A. No; but I could get it.

"Q. It isn't a question of what you could get. It is a question of what you have. Where was he married?

"A. Woodville, Miss.

"Q. How long is it since you have been at Woodville?

"A. I haven't been to Woodville since I came away from there. I was about two years there.

"Q. You were about two years old when you left?

"A. I suppose so.

"Q. You have no knowledge whatever, then, of your father and mother's marriage, no personal knowledge, have you?

"A. No.

"Q. None whatever?

"A. None."

### Decree.

Our former decree is therefore now reinstated and made the final decree of the court.

O'NIELL, C. J., dissents.