ROGERS, J., dissents from the rulings on bills Nos. 1, 2, and 3.

166 So. 488

Succession of WELLS.

No. 33634.

Jan. 6, 1936.

Rehearing Denied March 2, 1936.

Gaston L. Porterie, Atty. Gen., and Melvin F. Johnson, Sp. Asst. Atty. Gen., for the State.

Foster, Hall, Barret & Smith, of Shreveport, for Luedella Christian Lary, Coleman and George Christian, and as amicus curiæ for Ned Christian.

Wilkinson, Lewis & Wilkinson, of Shreveport, for John T. Guyton.

D. L. Perkins, in pro. per.

A. J. Murff, of Shreveport, for appellees.

LAND, Justice.

Ned Christian, during his marriage to his second wife, Harriet Watson, acquired 145 acres of land in Caddo parish, La.

Harriet Watson died intestate in 1895 or 1896. At her death she left, as issue of her marriage, three daughters, Julia, Eliza, and Sallie, each of whom inherited, by

mere operation of law, an undivided one-sixth interest in this property.

Sallie Christian never married. She died intestate, and was survived by her father and two sisters, and also by Coleman Wells, a natural child, who died intestate in the year, 1929, without heirs, and without causing himself to be put in possession of the estate of his natural mother by an order of court.

Alleging the succession of Coleman Wells to be vacant, John T. Guyton procured his appointment as administrator October 15, 1934, and sought to administer, as the vacant succession of Coleman Wells, the one-sixth interest in the 145 acres belonging to the estate of Sallie Christian.

An attempted administrator's sale was made to D. L. Perkins, and the state of Louisiana intervened to claim the proceeds.

Ned Christian, the father of Sallie Christian, and the children of her two deceased sisters, intervened, setting up their ownership of the property, by virtue of having acquired same from Sallie Christian, as her lawful heirs, in view of the fact that no judicial demand had been made against them for the estate of Sallie Christian by her natural child, Coleman Wells.

Trial in the district court resulted in a judgment sustaining the intervention and opposition of Ned Christian et al., setting aside the sale to Perkins, and decreeing interveners as the sole and only heirs of Sallie Christian, deceased, and, as such, owners, in their respective rights, of an undivided one-sixth interest in the property in dispute.

The curator, John T. Guyton; D. L. Perkins, the purchaser of the property at administrator's sale; and the state of Louisiana have appealed.

The interveners claiming the one-sixth interest of Sallie Christian, deceased, in the estate of her late mother *are her lawful* father, nephew, and nieces.

Article 940 of the Civil Code provides that: "A succession is acquired by the *legal* heir, who is called by law to the inheritance, *immediately* after the death of the deceased person to whom he succeeds." (Italics ours.)

Article 941 of the Civil Code provides that: "The right mentioned in the preceding article is acquired by the heir *by the operation of the law alone,* before he has taken any step *to put himself in possession,* or has expressed any will *to accept it."* (Italics ours.)

Article 944 of the Civil Code provides that: "The heir being considered as *having succeeded to the deceased from the instant of his death,* the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor." (Italics ours.)

By judicial proceedings entitled, Succession of Sallie and Harriet Christian, interveners accepted said succession and had themselves sent into possession. Tr. pp. 100 and 107.

▅ It is clear, therefore, that the seizin of the estate of Sallie Christian is le-

gally vested in the interveners, her lawful heirs, subject only to be divested by the action of a natural child, judicially claiming possession of the estate contradictorily with them.

In the case of Taylor v. Allen, 151 La. 82, at page 109, 91 So. 635, 644, it is said by Mr. Justice Provosty, writing the prevailing opinion:

"The mode of proceeding for obtaining from the court an order sending an acknowledged illegitimate child into possession of the succession of its mother is prescribed by articles 925 and 926, which read:

"'Art. 925. Children called to the succession of their natural father or mother, in the cases mentioned in the preceding articles, are permitted to take possession of the succession which has fallen to them *only by the order of the judge* of the parish in which the succession is opened.

"'Art. 926. If the succession be that of the natural mother deceased without legitimate children, the putting into possession of the natural children shall not be pronounced without calling the relations of the deceased, who would have inherited in the default of the natural children, if they are present or represented in the state; or without appointing a person to defend them, if they are absent.'" (Italics ours.)

In the succession of Veith v. Meyer, 166 La. 453, at page 456, 117 So. 552, 553, it is again said by this court: "It may be true that Minnie Ada Peyton might have, by her extrajudicial acts in connection with the property thereof, *accepted* the succession of her deceased mother, were she in

fact, as she claims to be, the *legitimate daughter* of her mother. But our conclusion is that the evidence does not support her claim that she is a *legitimate* daughter of the deceased. And, if she be only an *illegitimate* daughter, then she had no right to *accept* her mother's succession except by being *formally* recognized and put in possession thereof by order of court and in the manner pointed out by law. R.C.C. 925, 926, 949; Succession of Allen, 44 La. Ann. 801, 11 So. 42; Succession of Barber, 52 La.Ann. 960, 27 So. 363."

It is again said in Glenn v. West, 151 La. 522, at page 524, 92 So. 43, 44:

"Homer Scott, therefore, was an irregular heir of Lona McGee, and as such he *succeeded neither to the ownership nor to the possession* of this property at the date of her death, and plaintiff, as his legal heir, acquired no greater rights than deceased possessed at the opening of his succession.

"The petition fails to allege that Homer Scott was legally put into possession of the estate left him by Lona McGee. He, therefore, is not considered as having succeeded to the deceased from the instant of her death. As an irregular heir, he had only a right of action to cause himself to be put into possession of the succession falling to him, and this right of action, forming a part of his succession, was all that he transmitted at the moment of his death to the plaintiff. C.C. art. 949.

"Nor do we find in the petition in this case that plaintiff, prior to the institution of this suit, has at any time exercised her right of action as the legal heir of Homer

Scott, deceased, to be placed in possession of the estate of Lona McGee.

"The maxim, 'Le mort saisit le vif,' does not apply to irregular successions. Succession of Allen, 44 La.Ann. 801, 11 So. 42; Succession of Barber, 52 La.Ann. 960, 963, 27 So. 363. * * *

"It follows, therefore, that an irregular heir, or his *legal heir,* has no standing in court in a petitory action, *unless a judgment has been first obtained putting him or his legal heir into possession of an irregular succession; the allegation of the mere right of action* to be placed in possession of an irregular succession not being a sufficient profert in curia upon which to base an action in revendication." (Italics ours.)

There is no allegation or proof in the record that any judgment or order of court has ever been obtained putting Coleman Wells into possession of his natural mother's estate, much less contradictorily with the lawful relations of Sallie Christian, who inherited her property in default of the claim of any natural child.

The state is not the "legal heir" of Coleman Wells, deceased, the natural child of Sallie Christian, deceased. The admitted fact is that he died without *"heirs."*

Besides, it is said in Taylor v. Allen, 151 La. 82, 110, 91 So. 635, 645, adversely to the state's contentions: "And, moreover, what interest, or standing, have these appellants for raising the question. The succession belongs to the state only *'in defect'*

*(default) 'of lawful relations,* or of a surviving husband or wife, or acknowledged natural children.' Article 929, C.C. In other words,· the succession belongs to the state only in default, or, absence of 'relations.' *Now, therefore, if there had been relations who could have been cited, they would have inherited to the exclusion of the state,* and the state would be *without interest,* and consequently *without standing,* for prosecuting this appeal." (Italics ours.)

Under the decisions cited, supra, it is clear that when Coleman Wells died, before having made his demand to be put into possession of his natural mother's estate, he did not leave as a part of his succession the undivided one-sixth interest in the property which was owned by his natural mother, which has been inventoried as his property by the administrator or curator in these proceedings.

All that Coleman Wells could have possibly left as far as this property is concerned, was a right of action to *"his heirs"* to demand from the lawful heirs of Sallie Christian, deceased, that he be recognized as the acknowledged natural child of Sallie Christian and as the irregular heir of her succession.

Article 949 of the Civil Code specifically provides: "Natural children and the surviving husband or wife before being put into possession of the estate left to them, are not considered as having succeeded to the deceased *from the instant of his death;* but

they do not the less transmit their rights to their *heirs,* if they die before having made their demand to be put into possession. The reason is, that this sort of heirs *having only a right of action to cause themselves* to be put into possession of successions thus falling to them, *this right and this action form a part of their succession,* which they transmit to their *heirs."* (Italics ours.)

Coleman Wells left no "heirs" to exercise this right, and the state did not succeed to such right, as there were other lawful heirs of Sallie Christian, who claimed the property in her estate.

"A succession is called *vacant when no one claims it,* or when all the heirs are *unknown,* or when all the known heirs to it have *renounced* it." Civ.Code, art. 1095. (Italics ours.)

The legal heirs of Sallie Christian, deceased, succeeded her at the instant of her death; they have not renounced her succession; they are all known; they are all present claiming it in this proceeding; and have already accepted and been sent into possession. There is no default of "lawful relations" to claim the succession in this case.

The state is entitled to the proceeds of successions, only when they are vacant, under the express provisions of articles 1196 and 1197 of the Civil Code.

We find no error in the judgment appealed from.

Judgment affirmed.