Niza Dutillet et al. *v.* O. L. Blanchard—E. Bergeron et. als., Warrantors.

14  97
44  393

It cannot be objected to the confirmation of a land claim by Act of Congress, that the commissioner exceeded his powers by inquiring into and reporting upon a claim not embraced in the instructions of Congress, when it appears that Congress, notwithstanding, accepted the report and confirmed the claim.

The American State papers published by order of Congress are admissible as evidence  The copies which they contain of legislative and executive documents, are as good evidence as the originals are from which they are copied.

When the proceeding was *in rem* under the Act of the Legislature of 1829, relative to proceedings against lands for works done upon the roads and levees of the same—*Held :* That the Act only requires notice to be given " to any person whom it may concern," and that when there has been a sufficient description of the land in the advertisements, and the proprietor, by the use of due diligence might have protected himself, the sale will not be annulled  on the ground that the property was described as belonging to others than the real owner.

The prescription of five years, under the Act of the Legislature of 1834, would cure such an irregularity in the description of the property.

APPEAL from the District Court of the Parish of Assumption; *Roman, J.*
  *A. Gentile* and *E. Maurin,* for plaintiffs.  *Mills & LeBlanc* and *Beatty & Bush,* for defendants and warrantors, appellants.

Cole, J.   The plaintiffs, as heirs and representatives of *Thomas de Villanueva* and *Constance Dreaux,* his wife, claim a certain tract of land in the possession of defendant, which was confirmed to said *Villanueva.*

There was judgment for plaintiffs and defendant has appealed.

The points of contestation are the title of plaintiff, the identity of his title with the land in possession of defendant, and the effect of a purchase of the land made at Sheriff's sale.

1. The title of plaintiffs is established ; their claim is based upon an Act of Congress, passed the 28th of February, 1823, confirming said land to *Thomas de Villaneuva,* under No. 134, as stated in the American State Papers, vol. 3d, p. 516, and under No. 135, as appears from the certificate of *L. Palms,* the Register.

The Act of Congress of 11th of May, 1820, directs the Register to make a report to the Secretary of the Treasury upon certain claims of land.  1 Land Laws, p. 330.

The Act of Congress, dated 28th of February, 1823, confirms the claims described by the Register in his report of the 6th of January, 1821.

The Register, in that report, (American State Papers, vol. 3, p. 523,) says :

" The preceding claims comprehended in class third  are not founded on either Spanish grants, concessions or orders of survey exhibited to me, and are not, therefore, embraced in the literal meaning of the Act of 11th of May, 1820, but as I believe they are within the spirit of that Act, I have thought it proper to report them ; I infer this from analogy to former laws on the subject.  By previous Acts of Congress, claims in Louisiana have been recognized as valid, which were founded on settlement rights, provided the habitation and cultivation were shown to be on the 20th of December, 1803, or anterior to that period ; all the cases reported in this class are proved to have been in peaceable possession either by the claimants or those under whom they claim, before, and some of them long

13

previously to the 20th of December, 1803, and, therefore, would have been valid under former laws, to which I have alluded," &c.

He then proceeds to recommend them as claims worthy of confirmation.

It is objected, that the second and fourth sections of the Act of Congress of the 11th of May, 1820, provided only for the confirmation of claims " founded upon any Spanish grant, concession, or order of survey," whereas this claim of *Villanewva*, No. 135, is not founded either on a Spanish grant, concession or order of survey, but only, as appears from the certificate of claim, on actual inhabitancy and cultivation by claimant's author, under permission of proper Spanish officers, previous to the 20th of December, 1803.   Public Land Laws, Berchard's edition, vol. 1, pp. 330, 360.

This might have been a proper objection to have urged in Congress against the confirmation of the claims, in class third, but it is inoperative in the tribunals of the country.

If the Register reported upon classes of claims which were not comprehended in the instructions of Congress, it was in the power of Congress to have rejected the part of the report which embraced claims not contemplated by their Act of 11th of May, 1820 ; but Congress accepted the report and confirmed the claims.

The defendants cannot offer any valid objection to the confirmation, for they had no title in the lands confirmed, and they cannot control the disposition made of the public domain by the national legislature.

The confirmation of the claim of *Villaneuva* is established, independently of the certificates of the Register, which were objected to on several grounds. Plaintiff offered in evidence the American State Papers, vol. 3, from p. 506 to p. 523, inclusively, for the purpose of showing the different classes of claims therein contained, and the report of *Samuel H. Harper*, Register, on the 3d class, and to show that the claim of *Thomas de Villaneuva* is numbered in said State Papers 134, and that said claim was confirmed by Act of Congress of 1823, upon the report of said *Harper*.

The District Judge rejected the evidence, except as to the notice of the claim, for the purpose of proving *rem ipsam*.

The court erred.   The American State Papers are published by order of Congress, and are good evidence in land suits ; such is the doctrine of the Supreme Court of the United States.

In *Bryan et al.* v. *Forsyth*, 19 Howard, p. 339, they say that the American State Papers, published by order of Congress, may be read in evidence in the investigations of claims to lands, " they contain copies of legislative and executive documents and are as valid evidence as the originals are from which they are copied." See *Watkins* v. *Holman*, 16 Peters, p. 56.

These " State Papers" show that the claim of *Villaneuva* was confirmed by Act of Congress of 28th February, 1823, upon the report of *S. H. Harper*, Register:

There is a discrepancy between the certificate of the Register and the American State Papers, in the statement of the number of the claim ; in the former, it is No. 135, in the latter, No. 134 : this variance cannot benefit defendants.

Plaintiffs in their pleadings allege this discrepancy ; they describe the land fully, and annex the plat of survey made by the United States Government.   If this variance were not a mere clerical error, and there were two claims confirmed to *Villaneuva*, defendants could easily have shown, inasmuch as they were put on their guard as to the variance, that there existed another claim besides that

sued for, either under No. 135 or 134, in favor of *Villaneuva*, located elsewhere, on the Attakapas Canal.

2. The identity of the land claimed with that in possession of defendant is satisfactorily established, even if it should be considered not to have been admitted by the answer.

3. But, notwithstanding the title to the land in possession of defendant be established to have formerly been in the ancestor of plaintiff, the latter cannot recover it, because they have been divested of title in the same by its adjudication to *Edward Blanchard*, from whom the title passed by several mesne conveyances to the defendant.

The adjudication was made in a suit to recover payment of work done upon the roads and levees of the land in contestation, under the provisions of the Act of February 7th, 1829.

Plaintiffs urge that this adjudication could not affect their rights, because " the heirs of *Villaneuva* were not notified that their land was about to be sold, but they were put off their guard by the advertisement, which stated that it was the land of *McDonogh*, *Bringier* and *Hall*, and by the proceedings being carried on against these parties."

There are two forms of action under the Act of 1829, the one is personal, or against the owner personally ; the other is *in rem*, or against the property. Act 1829, §§ 27, 28, 29 ; B. & C. Dig. p. 755.

When the action is *in rem*, or against the land, the plaintiff presents his petition to the Judge, and prays that the property be seized and sold to pay the amount of his claim.

To the petition is annexed the claim of plaintiff, duly certified by the inspector.

On presentation of the petition the Judge orders the Sheriff to seize the property and to give notice in cases of non-residents in one of the newspapers published at New Orleans, and in cases of residents, in the newspapers published in the parish, if there be one ; if not, notice is given in the ordinary way, by posting the notice at the church door, court-house, and other public places of resort. The notice calls upon any person whom it may concern, to show cause to the court within one month from the date of the order directed to the Sheriff, why the property thus seized should not be sold according to the prayer of the petition ; and if at the expiration of the said month nobody does appear or make a defence in writing, the court proceeds to try the cause, *ex parte*, and pronounce if there be sufficient grounds in favor of the plaintiff, but if anybody appears and makes defence, the court proceeds to the hearing of the cause in the usual form. Act Feb. 7th, 1829, § 30.

The order given in the suit of *Edward Bergeron* against the lands of *J. Mc-Donald et als.* and dated on the 20th May, 1843, under which suit the land in controversy was sold, is as follows :

" Let an order of seizure issue as prayed for, and let the Sheriff seize the lands within described, and give notice during eight days in the English and French languages, in one of the newspapers printed in New Orleans, to *John McDonald* or *McDonogh, Louis Bringier* and *Hall*, and *to all whom it may concern*, to show cause in one month from the date of the order directed to the Sheriff, why the said lands should not be sold according to law to satisfy the sum of one thousand seven hundred and seventy-five dollars with legal interest thereon from judicial demand, and the costs of suit.

    [Signed]        H. F. DEBLIEUX, Judge Fourth District."

DUTILLET
v.
BLANCHARD.

On the 21st October, 1843, about five months subsequent to the previous order, the following judgment was rendered in the said suit of *Bergeron* :

" Three judicial days having elapsed since judgment by default was taken ; it being proved to the satisfaction of the court that the advertisements required by law have been made, and there being no opposition thereto, it is hereby ordered, adjudged and decreed, that the Sheriff of this parish proceed to sell the land within described to satisfy, &c.

[Signed]          Thos. C. Nicholls,
Judge Second District."

The notice ordered by *Judge Deblieux* was published in the Louisiana Courier, of New Orleans, but there is no copy in the record of the form of notice given, but it must be presumed that the notice was given as ordered, because the decree of *Judge Nicholls* was based upon the execution of the order of *Judge Deblieux* and the judgment declares that the advertisements required by law have been made, and as one of the requisitions of the law was, that notice should be given *to all whom it may concern,* the notice must have been so made. The Sheriff declares in his return that he gave due notice.

In pursuance of the judgment of *Judge Nicholls,* the Clerk issued an order dated the 17th November, 1843, to the Sheriff of Assumption, commanding him to seize the land " as the property of *John McDonald* or *McDonogh, Louis Bringier* and *Hall.*"

The Sheriff executed the writ on the 22d November, 1843. Afterwards, the Sheriff advertised the property for sale by advertisements in the French and English languages, announcing the sale to take place on Saturday, the 6th of January, 1844 ; and, as there was no newspaper in the parish, the advertisements were posted up in three different places of public resort in Assumption, to wit : on the parochial church door, at the parish court-house and at the door of the billiard room kept by *Pierre Blanchard,* at Napoleonville. The advertisement stated that the land was seized as the property of *John McDonald* or *McDonogh, Louis Bringier* and *Hall.*

At the sale on the 6th January, 1844, the land was adjudicated to *Edward Blanchard* for one thousand dollars cash, being over one-half of the appraised value, as required by the 30th section of the Act of 1829.

The action *in rem* is explained in the Code of Practice ; Art. 285 provides that provisional seizure may be ordered when the proceedings are *in rem,* that is to say, against the thing itself, which stands pledged for the debt, when the property is abandoned, or in cases where the owner of the thing is unknown or absent. Art. 292 declares that the Sheriff shall seize and take possession of the thing, directing at the same time that public notice be given to all persons interested, to appear within fifteen days to answer to the petition ; and Art. 294 provides, if no one answers the petition, that after certain proceedings, the property may be sold in execution. C. P. 290 to 295.

The Act of 1829 was passed subsequently to these provisions of the Code of Practice, relative to the action *in rem,* and is substantially the same. Act of 1829, § 20, 27 to 31.

The 30th section of the Act of 1829 only requires that notice shall be given to any person whom it may concern.

The law supposes that the description of the land will suffice to put the proprietor on his guard, and that he will know it is his property which is to be sold.

If this be so, the giving of a wrong name cannot deceive him. If it could, then the legislator must have erred in supposing that a description of the property would be sufficient to protect the interests of the proprietor.

The description of the land in the suit of *Blanchard* against it for the payment of his work was sufficient. It was as follows, in the notice of seizure : " a certain quantity of land situated in this parish, on the canal leading to Lake Veret, containing thirty-five arpents more or less fronting on the left bank of said canal, bounded above by lands of *Beasly* and *Barrow*, and below by lands of *Pierre Trahan*, seized as the property of *John McDonald* or *McDonogh, Louis Bringier* and *Hall.*"

Independent, however, of the notice given by the Sheriff, the proprietor of the land in contestation could have known by other ways, that his land would be sold.

By section 20 of the Act of 1829, the Inspector of Roads and Levees was obliged to make an inspection of the levees, bridges and highways, to ascertain what repairs were needed, to notify the planter, and afterwards to sell the work to the lowest bidder at public auction.

·It appears in evidence, that *Collins*, the Inspector, gave public notice in French and English advertisements posted at the parochial church door and the court-house door, that he would on a certain day sell the work to be done on the land in dispute, and afterwards sold it at public auction at the court-house of the parish.

It must be concluded, that if the proprietors had used the diligence .contemplated by law, and had used the precaution of having an agent upon the land, or in the parish to attend to the making of the road and levee thereon, they would have had ample notice, because an examination of the road and levee, with notice to the agent, accompanied by actual labor upon the road and levee, which may be considered almost as a direct personal notice ; also, the publication of the sale of the work upon the land sufficiently described ; also, the suit to get payment for the work, with advertisement of the seizure, would have put the agent upon his guard, and have been a sufficient notification to him of what was transpiring as to the land, and must be considered as doing away with the effect of the wrong name.

It is the duty of a proprietor to keep up his roads and levees, and be present upon the land or have an agent to attend to the same upon his land or in the parish at the time they need reparation.

If the proprietors or their agent had been upon the land, the working of the road and levee thereupon would have notified them of the future sale, for they must be supposed to have known the law, and that a sale in default of payment would follow the execution of the work.

The working of the road and levee would have sufficed at least to put them upon inquiry as to what would be the effect of this labor by those not employed by them.

Proprietors who have thus neglected their obligations are not to be favored over subsequent purchasers in good faith.

We are therefore of opinion, as the action of *Bergeron* was *in rem*, it was unnecessary for the Sheriff to state that he had seized the land, as that of any particular person. The seizure of the land, a sufficient description of the same, and notice to all the world were sufficient, and the addition of the words in the advertisement, " as the property of *John McDonald*," &c., if an irregularity, was cured by the prescription in the statute of 1834, which has been plead. Sess. Acts, 1834, p. 123, §4.

DUTILLET
v.
BLANCHARD.

It should be observed, this case differs from that of *Michel* v. *Parish of Terre-bonne*, in 9th Annual, and many others, in this point, that in this the plaintiffs seek to set aside a solemn judgment which has been rendered, whereas in the latter, injunctions were sued out to prevent the sale, or else the party did not institute the action *in rem* against the land, but at once sued the parish.

It is not necessary to decide in this suit, whether the objections now urged would have sufficed to have arrested the sale. *Morse* v. *McCall*, 13 An. 215 ; *Laforest* v. *Barrow*, 12 An. 149.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed, and that there be judgment in favor of defendants against the claims of plaintiffs, and that plaintiffs pay the costs of both courts.