court in the case of the State of Louisiana v. Philadelphia Underwriters (No. 14,883) ante, p. 47, 36 South. 221, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed.

PROVOSTY, J., dissents.

(36 South. 223.)

No. 14,865.

VICKSBURG, S. & P. R. CO. v. TIBBS et al.*

(Feb. 15, 1904.)

RES JUDICATA — ESTOPPEL — SUCCESSION—RE-FUSAL TO ACCEPT—JUDGMENT—COLLATERAL ATTACK — SWAMP LANDS — RAILROAD AID LANDS.

1. Whatever force there may be in the general proposition that a judgment as to the ownership of a portion of a tract of land is conclusive between the same parties claiming under the same titles, as to the ownership of the whole tract, the fact remains that a final judgment in a particular case is the law of that case, and when such judgment in terms declares that one title is at issue and another is not, it cannot constitute res judicata as to the title held to be not at issue.

2. A litigant denying a certain proposition of law and fact, and obtaining a judgment sustaining his position, cannot thereafter be heard to assert that which he had thus denied, though his opponent is entitled to whatever advantage may thereafter be gained by such adverse ruling.

3. Where the heirs have not accepted a succession, an administrator may stand in judgment for the purposes of a suit pending against the de cujus at the date of his death for the recovery of immovable property.

4. Where it appears that by consent of counsel and final judgment of this court an appeal taken by an administrator has been dismissed, the fact that the administrator was discharged before the rendition of the judgment of dismissal affords no ground for a collateral attack upon such judgment. The presumption is that the counsel with whose consent the judgment was rendered was properly authorized, and such presumption is not weakened when it appears that during 35 years the parties in interest have made no suggestion to the contrary.

5. The swamp land acts of Congress of 1849 and 1850 (9 Stat. 352, 519) were not intended to operate against the will of the state, and, the state having failed to select, and the Secretary of the Interior having failed to approve,

certain lands, as falling within the terms of those statutes, and such lands having been certified to, and accepted by, the state under the act of Congress of 1856 (11 Stat. 18), granting lands in aid of railroads, the title thus acquired by the railroads cannot be defeated by an individual claiming to have purchased the lands as swamp lands, and whose title has been annulled at the suit of the state.

(Syllabus by the Court).

Appeal from First Judicial District Court, Parish of Caddo; John Thomas Watkins, Judge, vice Alfred Dillingham Land, Judge recused.

Action by the Vicksburg, Shreveport & Pacific Railroad Company against Albert Tibbs and others. The heirs of W. W. Smith and others were substituted as defendants. Judgment for plaintiff, and defendants appeal. Affirmed.

Albert H. Leonard, William Pike Hall, and Edgar Williamson Sutherlin, for appellants. Stubbs & Russell (William Henry Wise, of counsel), for appellee.

Statement.

MONROE, J. This is a petitory action for the recovery of a tract of land in the parish of Caddo described as lots 1, 2, 3, 4, 5, 6, 7, 8, and 9, in S. 31, T. 18, R. 13, containing 179.80 acres, less 35.18 acres, not included in the demand. The original defendants disclaim title, and allege that they are in possession as tenants of A. H. Leonard, G. R. Wilson, and the heirs of W. W. Smith, who, assuming the defense, by way of exception plead res judicata and estoppel, and for answer set up title in themselves by patent to their author from the state of Louisiana, and by confirmation of title from the United States. After this suit was instituted the plaintiff company was put into the hands of a receiver, the land in controversy was adjudicated to C. C. Harvey, and the receiver and Harvey made themselves parties, and have set up a counterplea of res judicata. The plaintiff makes a claim for rents and revenues, and the defendants, in

---

*Rehearing denied March 28, 1904.

the event of their ejectment, for reimbursement of taxes paid; but those claims have, by consent, been reserved for future adjustment.

The land in question has been known as "Silver Lake," and in 1839, when the township in which it is situated was surveyed, was covered with water. It was not, however, selected by and approved to the state as swamp or overflowed land, under the acts of Congress of 1849 and 1850 (9 Stat. 352, 519), but upon the passage by the General Assembly of Act No. 284, p. 257, of 1853, authorizing the Register of the Land Office to sell, subject to the conditions provided in the act, certain "shallow lakes," that officer, on May 14, 1853, sold it to W. W. Smith, to whom, in February, 1855, he issued a patent. In December, 1857, the state brought suit in the district court for the parish of Caddo to annul the sale so made, on the grounds that the act authorizing it had not then been promulgated, and the land had not been surveyed as thereby required, and from a judgment maintaining an exception filed by Smith and dismissing the suit the state appealed to this court, where said judgment was reversed, and the case remanded. The defendant, W. W. Smith, then died, and his administrator, J. W. Smith, set up the title upon which the defendants now before the court rely, and after trial upon the merits there was judgment in favor of the state, decreeing "that the certificate of entry of * * * Silver Lake * * * in favor of W. W. Smith be annulled, avoided, and delivered up, * * * and that the patent issued * * * for Silver Lake be annulled, and now taken up." From this judgment the defendant appealed to this court, and upon August 11, 1869, the appeal was dismissed by consent of counsel. In the meanwhile—that is to say, by Act No. 228, p. 183, of 1853—the General Assembly had chartered a company to build a railroad from the Texas line, via Greenwood, Shreveport, and

Monroe, to a point on the Mississippi river opposite Vicksburg, and upon June 3, 1856 (11 Stat. 18), the President of the United States had approved an act of Congress granting to the state of Louisiana, for the purpose of aiding in the construction of said road, every alternate section of land for six sections in width on each side of its proposed line, subject to the condition that the land so granted should be used for no other purpose, and should be disposed of only as the Governor of the state should certify to the progress and completion of the work. It is shown that the land here in question fell within the limits of the grant thus made; that immediately upon the passage of the act, and before it was signed, the Secretary of the Interior ordered that it should be withdrawn from the market; and that thereafter a number of applications for its purchase for homestead purposes or otherwise were refused on the ground that it was included in the grant to the railroad company. In the last of these rulings, made in March, 1881, the Secretary of the Interior concludes by saying: "The foregoing decisions touching the land in question, as abated, have all the force and effect of stare decisis. Consequently the adjustment of the grant in 1874 in ascertainment of the right of the state under act of July 14, 1870 (16 Stat. 277), declaring a partial forfeiture, and the reapproval of the lists containing these particular lands as a part of said grant earned by the company, must be considered as a final adjustment of the subject-matter which exhausted the power and jurisdiction of the department."

In 1885 R. N. Smith and others brought suit in the Circuit Court of the United States, alleging that they had inherited Silver Lake from W. W. Smith, and that about 40 acres of it was unlawfully withheld from them by George A. Turner, and praying judgment for the land so withheld. Turner disclaimed title, and the railroad company

(present plaintiff) assumed the defense, and upon the trial offered to prove the value of the entire tract. The evidence offered for that purpose was, however, excluded upon the objection of the plaintiffs that there was nothing in controversy except the title to so much of the tract as was occupied by Turner and claimed by them, and there was judgment for plaintiffs for 35.18 acres of land, found to be occupied by Turner. The judgment so rendered was taken by writ of error to the Supreme Court of the United States, where the plaintiffs (defendants in error) moved to dismiss on the ground that the court was without jurisdiction, for the reason that the value in dispute was that of the particular parcel of land occupied by Turner, and not that of the entire Silver Lake tract; and the court, adopting that view, dismissed the writ, saying:

"All that the plaintiffs, in their petition, claimed to recover, was the part of the land which was in the possession of Turner, alleged therein to contain 40 acres, or more. The answer alleged that the land sought to be recovered in the suit was worth at least $10,000, and prayed that the plaintiffs' demand be rejected, and for judgment decreeing the company 'to be the owner of the land.' This put in issue only the land in the possession of Turner. The judgment is limited to a piece of land described by metes and bounds, and containing 35.18 acres, as shown by a map and survey of the same on file and of record in the cause. The value of that parcel of land is shown clearly to be not over $2,000, and this is conclusive as to our jurisdiction. * * * Writ of error dismissed." V., S. & P. R. R. Co. v. Smith, 135 U. S. 195, 10 Sup. Ct. 728, 34 L. Ed. 95.

In 1888, the heirs of Smith brought another suit, alleging that they had obtained judgment against Turner for 35.18 acres of the Silver Lake tract; that Jack Ford and others, whom they named, were in possession of the remainder of the tract; and praying judgment against them therefor. The parties made defendant filed a general denial, setting up no title in themselves, and not disclosing the name of the owner; the railroad company made no appearance; and there was judgment for plaintiffs, under which they were put in possession of the property claimed.

## Opinion.

Dealing with the pleas of res judicata and estoppel, as predicated by the defendants upon the judgment in the Turner Case, it will be observed that by an interlocutory ruling sustaining an objection urged by them, the judge of the Circuit Court held that the issue before the court in that case concerned only the title to the particular parcel of land occupied by Turner, and that the title to the remainder of Silver Lake tract was not involved; and it will also be observed that in the Supreme Court of the United States the defendants asked for and obtained the same ruling, and that the final judgment of that august tribunal decides no other question than that the title to the property here in dispute was not there at issue. Under these circumstances we are unable to follow the reasoning by which the defendants endeavor to show that the judgment in the Turner Case constitutes res judicata with respect to that title, since whatever force there may be in the general proposition that a judgment as to the ownership of a portion of a tract of land is conclusive between the same parties, claiming under the same titles, as to the ownership of the whole tract, the fact remains that the final judgment in any particular case is the law of that case, and that the thing adjudged in, and hence the law of, the Turner Case is precisely the reverse of that for which the defendants contend.

And so, with regard to the question of estoppel. The proposition advanced in the Turner Case—that the title to the whole Silver Lake tract was then at stake—having been

decided adversely to its contention, the present plaintiff is now entitled to whatever advantage is to be derived from that ruling, whilst the present defendants, whose position was there sustained, must now take the consequences, and cannot be heard here to assert what they there denied. In the suit against Ford and others the defendants were without capacity to litigate the title, and did not pretend to do so; hence nothing but the right of possession could have been determined. Young v. Chamberlain, 15 La. Ann. 454.

Considering the plea of res judicata predicated by the plaintiff on the judgment in the case of State v. Smith, it appears that the state there alleged that the Register of the Land Office had assumed to sell the Silver Lake tract under the authority of the act approved April 30, 1853 (being Act No. 284, p. 257, of the session of that year), which made special provision for the sale of "shallow lakes," as contradistinguished from swamp and overflowed lands; and further alleged that said sale was made before the act was promulgated, and in disregard of its provisions. Smith, the author of the present defendants, was cited, and filed certain exceptions, which were maintained, and after his death his administrator was made a party defendant, and filed an answer, upon which the case was tried upon its merits, with the result that there was judgment for the state annulling the title set up by Smith (being the identical title here set up by his heirs and their transferees). From the judgment so rendered the administrator appealed to this court, and in 1869 the appeal was dismissed by consent of counsel.

It is said by the learned counsel for the defendants that the judgment so rendered does not constitute res judicata, (1) because the administrator had no capacity to stand in judgment with respect to the title to immovable property; and (2) because the administrator was dead when the appeal was dismissed, and hence that the appeal is still pending. The answer is: (1) That the administrator had the capacity to stand in judgment in the case presented (Pauline v. Hubert, 14 La. Ann. 161; Woodward v. Thomas et al., 38 La. Ann. 238); and (2) that the appeal, having been dismissed by this court, is no longer pending here, and the judgment dismissing it is not open to collateral attack (Dupre v. Reggio, 6 La. 653; Ludeling v. Chaffe, 40 La. Ann. 649, 4 South. 586; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931; Colt v. Colt, 111 U. S. 578, 4 Sup. Ct. 553, 28 L. Ed. 520; Simmons v. Saul, 135 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054). It by no means follows, because the administrator was discharged after the appeal had been taken, that the counsel with whose consent it was dismissed was not properly authorized; and the presumption that he was so authorized is not weakened by the fact that during the 35 years which have elapsed since then no suggestion to the contrary has been made. We therefore conclude that the plea of res judicata, as set up by the plaintiff, is good.

This conclusion disposes of the contention that W. W. Smith bought the land in question as swamp or overflowed land, since the state, in the suit just referred to, distinctly alleged that it was not so sold, and its position was sustained by the judgment therein rendered. But if it had been sold as land acquired under the acts of Congress of 1849 and 1850 (9 Stat. 352, 519), the result would be the same, since it belonged to that class of land which, under the act of the General Assembly No. 247, p. 306, of 1855, could only have been sold after having been surveyed; and one of the causes of action set up by the state in its suit against Smith, and maintained by the judgment therein rendered, was that it had not been surveyed.

Finally, it is argued that under the acts of Congress of 1849 and 1850 (9 Stat. 352, 519) title in præsenti to all swamp and overflowed lands within its limits vested in the state of

Louisiana without regard to selection or approval, that the land in question was of that character, and that the state acquired it under those acts, and hence that the United States could not have granted and the state (or the Railroad Company) could not have acquired it under the act of June 3, 1856 (11 Stat. 18).

The acts of 1849 and 1850 (9 Stat. 352, 519) were clearly not intended to operate against the will of the state. Upon the contrary, they distinctly left it to the state to select, subject to the approval of the Secretary of the Interior, the lands which it might consider within the terms of the grant. Whether the state might have selected the tract in question, and whether such selection might or would have been approved, need not be here considered. In point of fact, not only was the selection not made and the approval not given, but the grantor and the grantee concurred in the view that the tract fell within the terms of the act of 1856, and was granted to and acquired by the state of Louisiana, as the trustee of the V., S. & T. R. Co., for the purpose of aiding in the construction of the railroad which that company was to build. The situation thus presented was considered by the Supreme Court of the United States in 1896 in a case in which the jurisprudence of the court was carefully reviewed, and the following propositions established (quoting from the syllabus):

"(1) The swamp-land act of 1850 (9 Stat. 519) gave an inchoate title to the state, but the identification of the lands by the Secretary of the Interior was necessary before the title became perfect or the state was entitled to a patent which vested the fee-simple title. (2) The certificate of the Secretary of the Interior, in 1858, that certain lands inured to the state under the railroad act of 1856 (11 Stat. 18), was a decision that they were not embraced by the swamp-land act of 1850. (3) The acceptance by the state of lands certified to it by the Secretary of the Interior, as in-

cluded in the railroad grant of 1856, is conclusive upon the state, and upon a county therein, and upon persons deriving their rights from the county, against a claim to the lands under the swamp-land act of 1850, where no patent had been issued, or identification of those lands made, by the Secretary of the Interior, under the latter act. (4) A contract with a county for swamp and overflowed lands gives no better right than the county had to the lands which had been previously certified to the state by the Secretary of the Interior as included in a railroad grant." Rogers Locomotive Machine Works v. American Emigrant Co., 164 U. S. 559, 17 Sup. Ct. 188, 41 L. Ed. 552.

Apart from the defenses which have been thus considered, there appears to be no objection to the plaintiff's title, as acquired under the act of Congress of June 3, 1856 (11 Stat. 18), and by purchase under foreclosure of mortgage against the original grantee, and, as to other parties, and other lands similarly acquired, it has more than once been affirmed by this court. Railroad Co. v. Sledge, 41 La. Ann. 896, 6 South. 725; Mower v. Kemp, 42 La. Ann. 1007, 8 South. 830; State v. Railroad Co., 44 La. Ann. 981, 11 South. 865; Railroad Co. v. Elmore et al., 46 La. Ann. 1237, 15 South. 701.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, at the cost of the appellants.

LAND, J., recused.