*534
 
 O’NIELL, C. J.
 

 This is an action to recover for the school board a sixteenth section in place, or, in the alternative, to collect the balance of the price of a sale of the section. The sale was made by the state to one John H.-Harmanson on the 7th of January, 1860. The suit was dismissed on an exception of no cause of action, and the relator, St. Landry parish school board, has appealed.
 

 It is alleged in the petition that the sale to Harmanson, dated the 7th of January, 1860, was annulled by a decree Of the district court on the 14th of November, 1870, but that the decree was not recorded in the conveyance records until the 2d of July, 1928; that, meantime, the title passed from Harmanson, through mesne conveyances, to the defendant in this suit; and that the mortgage and vendor’s lien resulting from the sale to Harmanson were not reinscribed in the mortgage records, so as to prevent their peremption. It was because of these admissions or allegations .in the relator’s petition that the suit was dismissed for want of a cause of action. The judge ad hoc rendered a written opinion which impresses us so favorably that we adopt and reproduce it, viz.:
 

 “The relator asserts ownership by the State, in trust for the public schools of St. Landry Parish, of Section 16, Tp. 3 S., R. 6. E., containing 641.12 acres. After setting out the acquisition from the United States, it is alleged ■ that on January 7, 1860, the Treasurer of the Parish, with due authorization, sold the land at public auction, by deed duly recorded in the conveyance and mortgage records, to one John H. Harmanson, on terms of ten per cent, cash, and the balance in nine equal annual installments, with mortgage and vendor’s lien retained ; that the purchaser failed to discharge the deferred payments, and that on November 14, 1870, the district attorney instituted suit thereon; that the defendant elected, under the law, to surrender title, and that, on May 11, 1872, judgment was rendered, cancelling the sale and retroceding the land to the State of Louisiana; that said judgment was recorded in the conveyance records of St. Landry Parish on July 2, 1928; that the Brooklyn Cooperage Company possesses and claims to own a portion of the said property, aggregating 480 acres, under a chain of title which is set out, beginning with a transfer from John H. Harmanson to Edw. P. Veazie and Aug. D. Harmanson, recorded on September 24, 18S9, through mesne conveyance (including certain sales for State taxes) to the respondent by transfer recorded on April 21, 1924. The prayer is for recognition of title, and in the alternative, for judgment for the unpaid purchase price, with recognition of mortgage and lien on the property.
 

 “An exception of no cause and no right of action was filed by the Respondent, and the issue of law thus presented must now be determined.
 

 “The exception of no cause of action is based upon the relator’s allegation that the judgment of retrocession, rendered in 1872, was not recorded in the Conveyance book of St. Landry Parish untii July 2, 1928, about fifty-six years after its rendition and four years subsequent to the final conveyance to the respondent. The exceptor relies upon the provisions of article 2266, Civ. Code, which reads:
 

 “ ‘All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto.’
 

 “It is conceded that this Article expresses the law as between individuals, and that the .registry laws affecting them are crystallized
 
 *536
 
 and interpreted in McDuffie v. Walker, 125 La. 152, 51 So. 100. The dispute is whether they affect and are binding upon the State and its subordinate public corporations exercising portions of the sovereignty.
 

 “The exact question thus presented appears to be res nova in Louisiana and perhaps in other jurisdictions; but a wealth of authority is found which expounds and supports the wholesome rule nullum tempus occurrit regi, and the rule that laches, however gross, cannot be imputed to the United States, nor to any of the States of the Union. It is thought by the relator that the philosophy upon which these rules are founded applies to the facts of this ease, namely, to the failure of the agents of the State to cause the judgment in its favor to be recorded as provided by Oiv. Code, art. 2266; and that the State is no more to be affected by this failure than by any other supposed laches of a sovereign by which a private citizen seeks to profit.
 

 “The respondent, on the other hand, reads the codal article as all-embracing, and as creating a species of estoppel which prevents any claimant to an immovable under the unrecorded instrument from setting up that instrument against another claiming under recorded title. And it is argued that while in some cases the sovereign is protected from the running of time, and from the laches of agents, the universal standards of good conscience bind the sovereign and estop him in the same manner and to the same extent to which they affect private persons. This principle is said to be a necessary quality of sovereignty; for while the ultimate authority must always be right, the fact that no appeal lies from his decision necessarily connotes a final appeal to his conscience.
 

 “Many text writers and many courts have said generally that laches is not imputable to the government, and that it is ordinarily protected from the bars arising from length of time and negligence. Under the common law, limitations derive their authority from statutes, and the King was held never to be included unless expressly named. Each of the American States took these prerogatives of the Crown, and conferred them in turn upon the Federal Government. State of Kansas v. Nagle, 100 Kan. 495, 164 P. 1073, L. R. A. 1917E, 1160, and authorities there cited and annotated.
 

 “It appears, however, that under the Spanish law property could be acquired by prescription from the Crown, and the earlier Louisiana jurisprudence held that the codal article which declares that prescription runs against all persons not specifically excluded or excepted, includes the State. Pepper v. Dunlap, 9 La. Ann. 137.
 

 “The majority opinion in Succession of Zacharie, 30 La. Ann. 1260, reaffirmed the earlier decision, but the concurring opinion of Manning, G. J., adhered to the general doctrine of nullum tempus occurrit regi, which was followed substantially in Reed v. Creditors, 39 La. Ann. 122, 1 So. 784. In both of the latter eases, however, the general expression was unnecessary in determining the issues ; they arose under the revenue laws, which have always been considered sui generis, and not affected by the codal prescription articles. Moreover, the Reed Case specifically approves Graham v. Tignor, 23 La. Ann. 570, where prescription was successfully pleaded 'against the State in an ‘action’ on notes for the deferred purchase price of school land.
 

 “It is said that the Sovereign legislates for his subjects, and not for himself, and that no statute can derogate from sovereignty, unless by express declaration or clear legislative in
 
 *538
 
 tention. This is a rule obviously sound, accepted by both the Common Law and Civil Law systems. See Black, p. 94, 1 Doneat, c. 11, §§ 41, 44; Manning, C. X, concurring in Succ. of Zacharie, supra.
 

 “In his sovereign capacity he is infallible, his rights immortal, and his vigilance presumed sleepless; and he acts in his own time, without blame for delay.
 

 “But while sovereignty would be less than sovereignty in the absence of such rules, it is equally true that, as thus broadly stated, and enforced without discriminátion in all affairs in which the sovereign or his subordinate lesser sovereignties may be interested, the rules might become instruments of oppression, inconsistent with the character of a government conclusively presumed to intend the good of its citizens.
 

 “Thus, to cite an extreme case, the State as a stockholder in a private corporation possesses only the rights of other stockholders. The ordinary civil statutes are enacted not only for natural persons, but for all persons, real or artificial, engaging in ordinary business. 37 G. J. 713 ; 21 C. X 217.
 

 “This applies generally to counties and municipalities, except in their governmental functions, and to school and levee districts, which possess no functions strictly governmental. 37 C. J. 714, 718.
 

 “It is not quite accurate, therefore, to say that the sovereign lays down the law only for its subjects; it is more accurate to say' that he legislates as to all matters which subject persons are competent to enter into; and if the sovereign acts in some capacity less than that of a sovereign, he acts under the; same law which he has imposed upon others.-
 

 “The distinction is clear in principle; and it is no doubt as necessary as it is clear; but it is difficult to classify the various activities of governmental agencies so that the principles may be applied correctly. In cases involving prescription and estoppel, our courts have often determined the rights of the sovereign.
 

 “In the present ease It is to be noted that the laches complained of by the respondent is a failure by the State to act for fifty-six years; and doubtless in addition to this equitable estoppel by inaction, and therefore by presumed acquiescence, may be argued the estoppel by act of assessing and collecting taxes, and by forced sale of the property for unpaid taxes, as set out by the relator in -his allegation of the chain of title under which the respondent claims; At the time of these sales, before statute law altered the rule, Louisiana jurisprudence held the State es-topped from claiming title by tax adjudication when it subsequently collected taxes from a private owner on the same property. Breaux v. Negrotto, 43 La. Ann. 426, 9 So. 502 ; Fraser v. Weckerling, 5 Orl. App. 310 ; Lisso & Bro. v. Giddens, 117 La. 507, 41 So. 1029.
 

 “Among other instances in which estoppel has been enforced against the State are: Chauvin v. Oyster Commission, 121 La. 10, 46 So. 38, where it was not permitted to assert that an area patented as swamp land was in fact navigable water; and in State v. Hackley, 124 La. 854, 50 So. 772, where the Court held, citing the historic case of Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162; {that, even though the patent is invalid for fraud, the government cannot recover the land from one who has acquired for value, without notice of the fraud.
 

 “In these cases, as in the case at bar, the government permitted the record title to leave the sovereign. Third persons acted toward the property as toward other property in
 
 *540
 
 commerce, and subject to private ownership' and transfer; and the court held the third persons blameless and the State bound by the record which it had made or permitted.
 

 “The case of State v. F. B. Williams Co., 131 La. 62, 58 So. 1033, contains nothing contrary to the cited cases. It holds the defendant liable as a possessor in legal bad faith, because he cut timber on a sixteenth section under an absolutely null contract with the school board. He was not a third possessor, but took the property with legal notice that his title was a nullity. He would have had no rights against any former owner whether a person or a sovereign State.
 

 “It is determined in that case, however,, that the State is owner in trust of school lands donated to it by the Federal Government, and that the local boards are mere administrators whose powers and duties axe dependent upon the consent of the sovereign. By statute, the local board has been authorized to sue for school lands in certain contingencies. The respondent says that the present case comes within the terms of the statute, and that the State is without right of action. But the court said in the Williams Case that the statute is merely an authorization by a principal to an agent to sue in behalf of its principal. Necessarily, that does not affect the right of the principal to sue in his own behalf.
 

 “The Williams Case, however, is of small value in determining the main issue here. In that case the title to the school land had never left the sovereign. The property was still held in trust by the State, as ‘everything held in her sovereign capacity is held as trustee.’ She had not permitted the title to depart from her and enter into private hands, as she has done in this case. Here she placed of record a deed of conveyance, executed, delivered and recorded in accordance with the laws she had enacted. The land became private property. It was owned, possessed and transferred under the laws regulating private ownership, possession and transfer. Private persons, notified of the law regulating title to private property, dealt with it under such law, and without notice that the State had sought to annul its conveyance. These facts bring the case within the rules affecting private property. If the State in any of its business is to be es-topped, as held in many cases, and to that extent controlled by laws enacted for the regulation of private business, the facts of this case required that its rights should be regulated by the Civil Code, art. No. 2266.
 

 “The first alternative demand of the relator is petitory, for the recovery of the land. It follows from the foregoing expression of views that the exception of no cause of action will be sustained as to that portion of the demand.
 

 “The second, or alternative, demand is for the recovery of the unpaid portion of the purchase price. This demand is urged only in case it is found that the State is without cause of action under the allegation that the land has been retroceded to the State. There is no reason why the two demands should not have been pleaded, and where the first is defeated by an exception of no cause of action, the second remains alone as the demand of the relator, unaffected by the first demand. The situation, therefore, is that the petition now alleges that the respondents possess the property under a title containing a condition that a portion of the original purchase price has not been paid. Were the State to be precluded from this remedy be: cause it had alleged alternatively that it wa
 
 s
 
 the legal owner of the land, it would result in estopping a litigant from allegations of
 
 *542
 
 law unsuccessfully urged, which is against all authority; and it would, moreover, give the respondent the benefit of two contradictory positions; first, that article 2266 protects his title from the judgment of retrocession, and second, that the judgment of retrocession protects him from payment for his title.
 

 “The exception as to this demand is urged, however, on the bases of the registry laws as to privileges and mortgages. Civ. Code, art. 3342 et seq.; Civ. Code, art. 3369. Articles 3342 to 3346 refer only to mortgages, but articles 3347 and 334S require that both mortgages and privileges, in order to affect third persons, must be recorded in the mortgage records. Article 3369 provides that the effect of this registry of both mortgages and privileges ceases, even as to the parties, at the end of ten years, unless re-inscribed.
 

 “It is not alleged that the mortgage and vendor’s privilege in this case has been re-inscribed, but it is alleged that the act of conveyance, with vendor’s privilege retained, is of record in the conveyance record. It is thus alleged that the lien or privilege is a part of the title, notified to any third purchaser. If the demand were for restitution of the property for failure of consideration) the exception would raise a question quite different from the one under consideration. The question here is whether the indebtedness represented by the credit portion of the purchase price remains secured by privilege on the property.
 

 “The recording and re-inscribing of privileges, which is required by the articles cited, is a recording and re-inscription in the mortgage office. Civ. Code, arts. 3271, 3348. Under the plain letter of the law, as set out in these articles, the vendor’s privilege in this case can have no effect on the rights of the respondent. The rights of the parties as to the second or alternative demand are controlled by the same considerations found in relation to the first demand. The contrary view previously expressed by the court was hastily arrived' at, without due consideration of the force of the codal articles which make no distinction between privileges and mortgages, as to registry in the mortgage records.”
 

 The judgment is affirmed.
 

 LAND, J., dissents.